Raver· v. Webster et al.

# RAVER *v.* WEBSTER *et al.*

In an action on an attachment bond, the record and proceedings in the attachment case, is competent evidence on the part of the plaintiff.

Where in an action on an attachment bond, executed in an action for tort, in which the defendant was charged with wrongfully and fraudulently breaking open a letter intrusted to him by the plaintiff, and which contained instructions to the agents of the plaintiff in relation to the entry of certain lands, the petition alleged that the attachment was sued out *willfully wrong*, and claimed exemplary damages; and where on the trial, the defendant offered a witness to prove that the plaintiff had stated to him, that he had opened the letter, as alleged in the petition in the attachment case, which evidence was objected to, and rejected by the court; *Held*, That the evidence offered had a tendency to show, that the defendant had reasonable ground for believing what he stated in his affidavit for the attachment, and was admissible.

Where the petition in an action on an attachment bond, charges that the plaintiff in the attachment acted *willfully wrong*, and seeks to recover exemplary damages, the true issue is, whether the plaintiff in the attachment, made the affidavit for the writ in good faith, and with full belief that the allegations therein contained were true.

The word "wrongfully," as used in section 1584 of the Code, means unjustly—injuriously—tortiously—in violation of law.

To make the act of the creditor in suing out an attachment, *willfully* wrong, and entitle the debtor to exemplary damages, it must appear that the creditor procured the attachment, without any reasonable ground to believe the truth of the matters stated in the affidavit for the writ, and with the intention, design, or set purpose, of injuring the defendant.

A court is not required to give the same instruction as often as it may be asked, but has a discretion to refuse it, after it has been once clearly given.

Where in an action on an attachment bond, the court instructed the jury as follows: "That the advice of counsel will go to rebut the idea of malice, but the defendant must prove that he submitted his case to an attorney; and that on the case submitted, he was advised by such attorney, that he had a good cause of action, and a right to sue out an attachment. When proved, it will save him from exemplary, but not from actual damages;" *Held*, That the instruction was substantially correct.

And where in such an action, the court refused to give an instruction as follows: "That if the jury are satisfied that the defendant was advised by counsel, practicing in this court, that the facts set forth in his petition, did constitute a legal cause of action, it will be a sufficient justification for bringing the suit, notwithstanding the attorney may have erred in his advice; "*Held*, That the instruction was properly refused.

In an action *not* founded on contract, the plaintiff is not entitled to an attachment, on the ground, that the defendant has property, goods, money, lands,

Raver v. Webster et al.

and tenements, or choses in action, not exempt from execution, which he
refuses to give either in payment or security of the debt.

The act entitled "An act to amend section 1848 of the Code of Iowa," ap-
proved January 24, 1853, applies alone to actions founded on contract.

Where in an action for tort, an attachment was sued out, for the cause that the
defendant has property, goods, money, &c., which he refuses to give either
in payment or security of said debt; and where in a subsequent action on
the attachment bond, for wrongfully and willfully suing out the attachment,
the plaintiff asked the court to instruct the jury, "that the affidavit for the
attachment set forth no sufficient cause for the attachment, for the reason
that the act of 1853, applied alone to actions founded on contracts," which
instruction was given; *Held*, That the instruction was properly given.

### Appeal from the Jones District Court.

THE defendant Webster, sued the plaintiff Raver, for a
tort, and procured an attachment against his property.   The
affidavit stated, "that said Raver had money, goods and
chattels, lands and tenements, which are not exempt from
execution, which he refuses to apply to the payment or se-
curity of said damages, though requested so to do by your
petitioner."   On the trial of that action, there was judgment
for Raver.   He now sues on the attachment bond, alleging
that the attachment was sued out *willfully wrong*, and claim-
ing exemplary damages.   During the trial, certain testimony
was offered by defendants, and rejected—and certain instruc-
tions given and refused—to which they excepted.   They now
appeal, and the errors assigned, as well as the further facts
of the case, will sufficiently appear from the opinion of the
court.

*Smith, McKinlay & Poor*, and *W. J. Henry*, for the appel-
lants.

*H. O'Connor*, for the appellee.

WRIGHT, C. J.—The first assignment is, that the court
erred in admitting the record and proceedings in the orig-
inal case, in evidence against the sureties in the attachment
bond.   There can be no question as to the admissibility of

this evidence. Of its competency, there can be no doubt. Among other matters contained in this record, was the bond on which the suit was brought, as also the affidavit and judgment. Was it not material for plaintiff to show these matters? Indeed, without the record in the original case, how could any plaintiff ever sustain an action upon an attachment bond? It seems to us, to be the most pertinent and necessary evidence that a party could introduce in such cases. Its conclusiveness raises another question, which is made by the second assignment of error, which we next proceed to notice.

In the attachment suit, Webster sought to recover damages for the alleged wrongful and fraudulent act of Raver, in breaking open a letter intrusted to his care by Webster, which contained instructions from him to his agents, in relation to the entry of certain lands.· On the trial of this case, as shown by the bill of exceptions, the defendants introduced a witness, by whom they proposed to prove, that said Raver had stated to him, that he had opened the letter, as alleged in the petition of Webster, which testimony was objected to by plaintiff, and the objection sustained.

To determine this question, it becomes necessary to first ascertain what is the true issue in this class of cases? Is it that the defendant in the attachment was not, in *fact*, indebted to the plaintiff in the manner charged? Or, to take a case of more frequent occurrence in practice, is the issue whether the defendant, at the time of making the affidavit, *was in fact* a non-resident of the state; or, in fact, about to dispose of his property, with intent to defraud his creditors; or, in *fact*, about to do, or refuse to do, any one of the things which entitle the creditor to an attachment? Or, on the other hand, is the true issue, whether the affiant as a reasonable, prudent, and cautious man, had *good reason* to believe, and did believe, what he stated as true?

And notwithstanding the rejection of this testimony, would seem to indicate that the court below regarded the issue *first* stated, to be the true one, yet the instructions given would tend to show that the *latter*, was the one submitted to the jury,

for we find the following instructions asked by defendants, and given by the court:

"12. That the petition in an attachment cause, and verdict and judgment therein, are not in themselves, in all cases, sufficient evidence that the attachment was willfully wrong."

"13. That it cannot be presumed against Webster, that he willfully swore to an untruth; that the verdict and judgment against him in the other case, are not of themselves, evidence that the petition in that case, was untrue, but merely that Webster failed to prove it before the jury; or that if true, they considered it no cause of action."

"14. That the verdict and judgment in the other case, are not of themselves sufficient to rebut the presumption, that Webster made affidavit to the petition in good faith, and with full belief that the allegations therein made were true."

Now, we think it quite manifest that if these instructions are correct, (and especially those numbered 13 and 14,) then the testimony offered should have been received. For to say that the former verdict and judgment were not in themselves evidence, that the petition therein was untrue, and that they were not of themselves sufficient to rebut the presumption that he made the affidavit in good faith, and with the full belief that its allegations were true, would seem to recognize, either the necessity for further proof on the part of the plaintiff to sustain his action, or that defendants might be allowed to show, notwithstanding said verdict and judgment, that the affidavit was made in good faith. And in either event, the testimony offered would seem to be pertinent. For certainly if the question of good faith was subject to inquiry, after the judgment in the original action, the testimony as to what Raver said in relation to the breaking open the letter, as charged in the original petition, if brought home to Webster, before making the affidavit, would be quite material for the consideration of the jury. But if, on the other hand, the true inquiry in such cases is, whether the affidavit is true in *fact*, or in this case, whether Raver was in *fact* liable in damages for the matters stated in the original petition, then it seems to us that the judgment would conclude the parties

on that issue, and further, that these instructions were incorrect, and this testimony inadmissible. Which, then, is the true issue?

Without now determining what would be the rule, where damages are claimed for the *wrongful* issuance of the attachment, we incline to the opinion, and so hold, that in the case before us, where the petition charges that the plaintiff in the attachment acted *willfully wrong*, and seeks to recover exemplary damages, the true issue is, that made and presented by the instructions, and that the testimony offered, was, therefore, improperly rejected.

Our law provides that the plaintiff in attachment, shall give bond, conditioned that he will pay all damages which the plaintiff may sustain by reason of the wrongful suing out of the attachment. In an action on such bond, the plaintiff therein may recover, if he shows that the attachment was *wrongfully* sued out, and if *willfully wrong*, he may recover *exemplary* damages; nor need he wait until the principal suit is determined before he brings suit on the bond. Code, § 1854. By " wrongfully," as here used, we understand is meant—unjustly—injuriously—tortiously—in violation of right. To make the act of the creditor *willfully* wrong, and entitle the debtor to exemplary damages, something more is necessary. It must appear that he procured the attachment without any reasonable ground to believe the truth of the matters stated in the affidavit, and with the intention, design, or set purpose, of injuring the defendant. And, therefore, the inquiry where exemplary damages are claimed, is, did the plaintiff act willfully, or with the design and intention of injuring the defendant? and as a consequence of this, though he may fail in his action, he is not, therefore, precluded from showing in an action brought on the attachment bond, that he acted in good faith, and at the time he made the affidavit, he had good reason to believe that he had a just and valid claim against the defendant. The judgment against him, it is true, was a judicial determination of the matters then in litigation, and the correctness of that finding, could not again be drawn into controversy. It may, therefore, be admitted

Raver v. Webster et al.

that by the judgment, it was authoritatively determined, that plaintiff had no such claim against defendant as was set up in his petition.   And yet, it would not follow as a consequence, that he had not good reason to believe that he had, or that he might not in good faith, and with no intention or design to injure defendant, have made the affidavit, and procured the attachment.   The issues, we think, are quite distinct.

Let us by a brief reference to what we understand to be some of the circumstances of this case, further illustrate our position.   As before stated, Webster charged Raver with having broken open a letter, and thereby to have obtained information which induced Raver to proceed at once to enter the parcel of land, which by the letter Webster had instructed his agents to enter for him, whereby he, Webster, was injured, &c.   From the instructions in the case, it also seems, that before obtaining his attachment, Webster consulted an attorney, and probably acted under his advice and direction.   Now, the very character of the charge was such as to make the proof of it, in most instances, quite and even extremely difficult.   This fact should perhaps, have counseled care on the part of the affiant, before making so serious a charge against defendant.   And yet the circumstances within his knowledge, after the most careful inquiry, may have been such as to produce the clearest conviction on his mind, of defendant's guilt.   Other circumstances may have developed themselves subsequently ; the defendant may have shown many facts in his defence ; all of which, when known and proved, may have satisfied the plaintiff, as they did the jury, that there was no just foundation for the charge.   But to make the finding of the jury as to the fact of the indebtedness, or as to the truth or falsity of the charge made in an action for a tort, conclusive evidence of the intention of the affiant, to injure the defendant, is, in our opinion, to disregard the consideration of those circumstances upon which he acted, and to leave out of view entirely the motive by which he was in fact governed.   Suppose a number of persons, of whose veracity he had no reason to doubt, had told him be-

fore making this affidavit, that Raver had, in their presence, broken open this letter; or that he had told them, that he had broken it open; and before the trial of the original action, they had died, or for some cause their testimony could not be obtained, or when called on to the stand in that trial, they had denied all knowledge of anything of the kind, would it do to say, that because plaintiff under such circumstances, had failed in his action, he could not, when sued on the bond, in order to show the good faith with which he acted, prove by other persons, that these witnesses had stated to him these facts? We think most clearly not. And thus we might, in various ways, illustrate the impropriety of making the judgment conclusive, but these must suffice.

The judgment may be sufficient evidence that there was, in fact, no ground for the institution of the suit, but to make it conclusive that the plaintiff had no reasonable grounds to believe what he stated, and acted willfully wrong, we think, is giving it too much effect. As the testimony offered, therefore, had a tendency to show that he had reasonable grounds for believing what he stated in his affidavit, it was admissible. We say it had a tendency to prove this. Of course, it must be shown that it was known to the affiant at the time of making the affidavit. If not known to him, he could not have acted upon it. No objection of this kind was made to its introduction, however, and it was the right of the defendants to first prove the fact, and bring it home, if they could, to the affiant. If they fail in thus bringing it to his knowledge, it should of course be rejected.

The disposition of this question, must reverse the case. Several other errors are assigned, however, which we will briefly notice, as they may arise in a subsequent trial.

It is claimed that the sureties, by the *terms* of the bond, are not liable for the damages sustained, *after* the making of it, but only for those sustained *before* that time. To this, we answer, that no such point was directly made or determined by the court below. That court was not called upon to give a construction to the bond itself. At least, no construction was given adverse to that urged by appellants. On the con-

Raver v. Webster et al.

trary, the instructions on this point, as far as they go, are quite as favorable to them, as they can reasonably ask. They have certainly no reason to complain.

It is next objected, that an instruction numbered four, was improperly refused. We think, that another instruction asked by defendants, and given, covers substantially and sufficiently the same ground, and there was, therefore, no error in refusing the fourth. A court is not bound to give the same instruction, as often as it may be asked, but has a discretion to refuse it, after it has been once clearly given. And it would be well, in our opinion, if this discretion was more fully exercised.

During the progress of the trial, the court, at the request of the plaintiff, instructed the jury, that " the advice of counsel will go to rebut the idea of malice, but the defendant must prove that he submitted his case to an attorney, and that on the case submitted, he was advised by said attorney, that he had a good cause of action, and a right to sue out an attachment. It is for him to make out this defence, and he must prove it. When proved, it will save him from exemplary, but not from actual damages." The defendant then asked the court to instruct the jury, " that if the jury are satisfied that the defendant, Webster, was advised by counsel, practicing in this court, that the facts set forth in his petition, did constitute a legal cause of action, it will be a sufficient justification for bringing the suit, notwithstanding the attorney may have erred in giving such advice," which instruction the court refused to give. In regard to these instructions, we need only say, that we think the instruction given, as asked by plaintiff, is substantially correct, or at least, we see nothing in the circumstances of the case, which would lead us to believe it to be incorrect. The one asked by defendant, goes too far. The fact, as there stated, might if proved, be a circumstance to be weighed by the jury in assessing damages, but the instruction assumes that it would be a sufficient *justification* for bringing the original suit. Without some further qualifications, the instruction was properly refused.

Another point made, and one of no little practical importance is, whether for the cause set forth in the affidavit, a party is, or is not, entitled to an attachment in an action not founded on contract.

The Code, (§ 1846,) provides that in an action for the recovery of money, the plaintiff may cause any property of the defendant, which is not exempt from execution, to be attached on the commencement or during the progress of the proceedings, by pursuing the course hereinafter presented.   Section 1848 provides, that "the petition which asks an attachment, must in all cases be sworn to.   It must state that, as affiant verily believes, the defendant is a foreign corporation, or acting as such; or that he is a non-resident of the state; or that he is in some manner about to dispose of, or remove his property out of the state, without leaving sufficient remaining for the payment of his debts; or that he has disposed of his property, (in whole or in part,) with intent to defraud his creditors; or that he has absconded, so that the ordinary process cannot be served upon him."   And then, by sections 1849, 1850, and 1851, it is provided, that if the demand is founded on *contract*, the petition must state that something is due, *and as nearly as practicable the exact amount*, which amount is intended as a guide to the sheriff in making his levy, who is to attach property fifty per cent. greater in value, than the amount thus stated.   If the demand is *not* founded on contract, the petition must be presented to some judge of the Supreme, District, or County Court, who is to make an allowance thereon, of the amount in value of the property to be attached, but this provision applies *only* to cases *in the District Court.*

In 1853, section 1848 was amended as follows:  "That in addition to the causes for which an attachment may issue, as prescribed in said section, said writ shall be authorized upon the plaintiff's statement in his petition, sworn to as therein required, that the defendant is about to abscond, to the injury of his creditors, or that he has property, goods or money, or lands and tenements, or choses in action, not exempt from

execution, which he refuses to give either in payment or security of said debt." Laws of 1853, ch. 84, 143.

In this case, the court instructed the jury that the affidavit set forth no sufficient cause for an attachment, for the reason that the provisions of this amendatory law, applied alone to actions founded on contract. And while the question is not entirely free from doubt, yet we think, the spirit, if not the strict letter of the law, favors this ruling.

To allow an attachment under any circumstances, in actions for torts, is not allowed in many of the states; and never, unless under some other restrictions than those provided in actions on contract; and hence, under our Code, in such actions, some of the officers named, must make an allowance of the amount of property to be attached, whereas, in actions on contract, the filing of the affidavit and bond procures the writ. And while we are not inclined to give so strict a construction to any part of the attachment law, as will limit or restrain its full and legitimate operation, we are not disposed to extend its provisions in actions for torts, beyond what may clearly seem to be its intention and purpose. And, therefore, we would not recognize the right to an attachment in such cases, unless such was evidently the intention of the legislature. And in consonance with this, is the first argument we would present in favor of the ruling of the court below. To allow an attachment in actions on contract, even for the causes set forth in this affidavit, is an innovation upon the law, as it had stood from the organization of even our territorial government. This fact alone, should lead us to limit its operation to that class of cases, unless the other is also fairly included in its provisions. Again, this amendatory act, we think, contemplates that the claim sued on shall be liquidated or ascertained, or one which is susceptible of being rendered certain, without the judgment of a court. It contemplates the right of the creditor to *demand* payment or security for his *debt*, and a refusal on the part of the debtor to either pay or secure the *debt* as requested. And while we would not lay too great stress on the word *debt*, as here used, yet we are not at liberty to entirely disregard it.

We cannot suppose that the legislature used the word in any other sense, than that ordinarily and appropriately attached to it. And thus construed, we understand it to mean, to owe, or that which is contracted—from *debeo*, to owe—*debitum*, contracted—that which is due or owing from one person to another; that for which a person is held, or which he is bound to pay. Now, if one man assaults and beats another; if one shall slander his neighbor, or commit any other act, amounting to a tort or wrong; while he may be answerable in damages, yet we never speak of the amount to which the injured party may be entitled, as a *debt;* it is not set down by the business man ordinarily among his assets or liabilities, nor in any way do we regard it in the nature of a sum owing or due, as by contract.

But without pursuing this thought further, we turn our attention more particularly, to the other language of the law. To give a party the right to demand payment or security for the claim he may hold against another, presupposes almost necessarily, that his claim or demand is either in fact ascertained and settled, or that it may be approximated at least, by fixing a value on those things, or those services, which in every community, have some estimated or marketable worth. Else, on what basis would he proceed in demanding payment or security? Or if payment or security should be offered, for what amount? By whom or how, is the amount to be ascertained? If the defendant is willing to comply, where is the data from which the computation is to be made? It will be readily seen, that all these, and many other difficulties, would arise on the application of this law to actions for torts. The defendant must refuse to give his money or property in payment or security for the debt. There is something for him to do, or refuse to do, before he is liable to this process. And why shall he be liable for refusing to do that, which in many cases, would be almost, if not quite impossible, from the fact that neither party can tell what the debt or demand really is. A. breaks B.'s arm or leg, or as a surgeon, he treats some fracture in so unskillful a manner, that B. is deprived of the use of his limb; or he

accuses him of a crime, and is liable in an action of slander. B. thereupon says to him, "I demand that you pay or secure me for the damages I have sustained by your wrongful act;" to which A. responds, either that he does not owe him anything, or that he is ready to comply. Has B. the data, within the meaning of this law, from which they can proceed to estimate the amount to be paid or secured? Or if he has, according to his appreciation of the injuries received at the hands of A., is it probable that A. will agree with him? If experience in such cases prove anything, it is that parties would very seldom, if ever, agree, on the amount. The consequence is, that you make the defendant liable to an attachment, when he may be guilty of no wrong; when he is willing to do what he conceives to be his honest duty; and when it is the plaintiff, perhaps, smarting under his real or imagined injuries, who over estimates what is due from the defendant. Now, we suppose, that this law was intended *primarily* to meet a class of cases of the following character: The creditor has a known and undisputed debt against his debtor. It is due, and should be paid. His debtor has money or property, with which he can, if so disposed, either pay or secure this debt; he is appealed to for this purpose, and refuses. The law then says, in effect: this debt you are able to, and ought to pay, or at least secure; you refuse to do either; and your creditor upon making affidavit to that effect, may secure himself by attachment. We say, we think, this was the *primary* intention of the law. In its application it may, and we think, does include those cases of contract, where there may be dispute as to the amount due. And so there may be cases in tort, where the amount to be paid could be ascertained with perhaps less difficulty, than others founded on contract. But such would be exceptions— the rule is certainly the other way. And while there may be difficulties in applying the law to *all* actions founded on contract, which would not arise in *some* actions for torts, we nevertheless think, that as a *rule*, it was intended to apply to the one, and not the other.

We conclude, therefore, that this instruction was properly

given. How far the fact that such an affidavit did not entitle the party to his attachment, may affect his liability on ·the bond, is a question not now before us, and upon it we intimate no opinion.

Because there was error in excluding the testimony offered by defendants, the judgment is reversed, and cause remanded.