FRANK HANDY, PLAINTIFF IN ERROR, V. JACOB BRONG, DEFENDANT IN ERROR.

**An Attachment,** under the code of Nebraska, cannot be maintained in an action of tort.

ERROR to the district court for Seward County.

This was an action of tort. Judgment overruling a motion to discharge an attachment issued in the cause, being given against Handy, defendant in the court below, he brought the cause here by petition in error. The opinion states the facts of the case.

*George B. France,* for plaintiff in error.

I. An action of tort is one brought to recover damages. The damages are uncertain, unliquidated, and in many cases vindictive, so that a party who brings an action of tort, may be said to seek money, yet his action is not among that class of actions contemplated in sections 198 and 199 of the code, otherwise in a frivolous action for defamation of character, a plaintiff might set forth in his complaint an excessive amount of damages, make an affidavit to that effect, and get a most oppressive attachment against a defendant's property.

II. No plaintiff who brings an action of tort to recover damages, in their nature uncertain, unliquidated, speculative, and perhaps excessive, can specify by affidavit the nature, amount and ground of his claim. If he do so swear, his oath only amounts to the expression of his opinion, which is not sufficient. *Ackroyd v. Ackroyd,* 20 *How. Pr.,* 93.

III. It would be inaugurating a new remedy to allow a plaintiff an attachment against the property of the de-

fendant, in such an action as this, because the said defendant is about to convert a part of his property into money for the purpose of placing it beyond the reach of his creditors. It would be turning such plaintiff into a creditor from the mere fact of his bringing a tortious action. *Hynson v. Taylor*, 3 *Ark.*, 552. *Raver v. Webster*, 3 *Iowa*, 502.

*Scott & Boyd*, for defendant in error.

I. The remedy by attachment is prohibited in certain cases, which does not include this case. *Gen'l Stat.*, 556.

II. It is the tendency of the new states to enlarge the remedy by attachment, and in some states the language which would limit the remedy to contract only has been replaced by more comprehensive terms. *Davison v. Owens*, 12 *Ohio State*, 158. *Goble v. Owens*, *Id.*, 165. *Drake on Attachment, Sec's* 7, 34.

III. The language which forbids the attachment in certain cases, and the form and substance of the affidavit provided by the Nebraska Code, seems to be provided with a view to this class of cases, or else have no meaning. *Gen'l Stat.*, 556.

GANTT, J.

In this action Brong was plaintiff in the court below, and in his petition there filed, he alleges that Handy, the plaintiff in error, did carelessly and negligently set fire to the prairie grass, and that this fire burned up and destroyed a large amount of his personal property, estimating the value thereof at the sum of one thousand dollars. Sometime after the commencement of the action, Brong filed an affidavit for an attachment, setting forth, *inter alia*, his "claim for one thousand dollars for

personal property burned by the negligence of Handy in setting fire to and burning prairie grass in the county of Seward," and the ground on which the attachment is asked is, that Handy "was about to convert a part of his property into money for the purpose of placing it beyond the reach of his creditors." The plaintiff in error moved to discharge the attachment; the motion was overruled, to which ruling and judgment of the court exception was taken at the time. The error now complained of is "that the court erred in overruling the motion to discharge the attachment." Therefore, the only question raised in the case is, can an attachment be maintained in actions for tort, under the provisional remedies of our code?

In the examination of this question, it may be· first observed that an attachment is an extraordinary proceeding, and that the allowance of such writ, is a wide departure from the common law. Hence, it seems a well established rule that statutes of this nature are to be strictly construed; but however this may be, it is a principle well founded in reason and sound in policy, that in no case can the force and effect of the statute be extended by implication. The original attachment law of our state was taken from the code of Iowa; it provided that "in actions for the recovery of money," the plaintiff might cause any property of the defendant, not exempt from execution, to be attached, by pursuing the course prescribed; and it further provided that "if the demand was not founded on contract," the original petition should be presented to a judge of the supreme or . district court, or the probate judge, to make an allowance thereon of the amount in value of the property that might be attached. Thus stood our attachment law until 1858, when in a re-enactment of the code, that part of the old law, which provided for attachments in actions for tort, was wholly omitted, and therefore, since

1858, the law is, that "the plaintiff in a civil action for the recovery of money, may at or after the commencement thereof, have an attachment against the property of the defendant" by pursuing the course prescribed. In this re-enactment of the attachment law, not only the restrictions, but the entire statutory provision in respect of allowing attachments in actions for tort, are omitted; and, if from this omission in the re-enactment, a conclusion is to be drawn in respect to the intention of the legislature, it seems pretty clear that the purpose and intent of the lawmakers was to restrict the extraordinary proceeding by attachment to actions arising on contract, express or implied. In Iowa, whence our original attachment law was borrowed, in the case of *Raver v. Webster*, 3 *Iowa*, 511, the court say that "to allow an attachment under any circumstances, in actions for tort, is not allowed in many of the states; *and never* unless under some other restrictions than those provided in actions on contract; and hence, under our code, in such actions, some of the officers named must make an allowance of the amount of property to be attached, whereas, in actions on contract, the filing of the affidavit and bond procures the writ. And while we are not inclined to give so strict a construction to any part of the attachment law, as will limit or restrain its full and legitimate operation, we are not disposed to extend its provisions in actions for tort, beyond what may clearly seem to be its intention and purpose. And therefore we would not recognize the right to an attachment in such cases, unless such was evidently the intention of the legislature." It seems, therefore, in Iowa, whence our original law was borrowed, that attachment in actions for tort, could only be maintained under the special provision of the statute allowing it, under certain restrictions which had to be complied with. Hence the section, which simply provides that in an action for the recovery

of money, the plaintiff may cause the property of the defendant to be attached, is viewed as applying only to actions on contract, where the filing of the affidavit and bond procures the writ.

In Pennsylvania, the original attachment was for the recovery of money arising *ex contractu;* the new act of 1836 omits any such clause, and in *Porter v. Hildebrand*, 14 *Penn., State*, 131, Bell, J., in delivering the opinion of the court, says of attachments: "Indeed so far as I am informed it has at no time and no where been esteemed a mode of vindicating every wrong which might be committed.    *    *    *    As a peculiar remedy for enforcing payment of debts,    *    *    *    it has been found useful, though certainly not unattended with inconvenience, but I have heard no sufficient reason suggested for hazarding the doubtful experiment of conceding the extended efficacy, now, for the first time claimed for it. If such reasons exist, they would be more properly addressed to the legislature, where alone resides the power of extending the sphere of its circle by specially declaring the additional clauses of complaint to which it should be applicable. An attempt by us to extend the circle of its operation, could only be effected by the declaration of a general rule which would bring within its remedial power every species of tort, embracing every injury to persons, to property, and to reputation, including crim. con. assault and battery, and trespass *de bonis asportatis*, a stride which would be more apt to attract admiration of its boldness, than commendation of its wisdom." In this case it was contended that the words of the new statute were "broad enough to comprise all complaints." To this the answer is, "and so they are. Yet the question recurs, were they used in a sense so comprehensive? That they were not, is indisputable from the nature of the remedy, as understood before the act of 1836, and the *absence of any direct expression to indicate an intended*

extension of it, an omission wholly irreconcilable with the imputed legislative design."

But the ground on which the attachment was asked in the case at bar is, that Handy was about to convert a part of his property into money for the purpose of placing it beyond the reach of his *creditors*. Hence, the ground on which the attachment was obtained, under the law, involves the existence of the relative character of creditor and debtor; and it seems to be a settled rule that when this relative character of creditor and debtor is used in statutes in respect of parties to actions, the remedy provided by such statutes is confined exclusively to actions *ex contractu*.

In *Raver v. Webster, supra*, it seems that the amended law of 1853, of Iowa, provided that in addition to the causes for which attachments may issue, the writ should be allowed upon the sworn statement of the plaintiff, "that the defendant is about to abscond to the injury of his *creditors*, or that he has property, goods, etc., not exempt from execution, which he refuses to give either in payment or security of said debt." In that case the jury were instructed that the affidavit set forth no sufficient cause for an attachment, for the reason that this provision applied alone to actions founded on contract. It was held that "the spirit, if not the strict letter of the law, favors this ruling," and that the amendatory act "contemplates that the claim sued on shall be liquidated or ascertained, or one which is susceptible of being rendered certain, without the judgment of a court." And it is further said that it cannot be supposed "that the legislature used the word in any other sense than that ordinarily and appropriately attached to it. And thus construed we understand it to mean to owe, or that which is contracted—from *debea*, to owe—*debitum*, contracted —that which is due or owing from one person to another; that for which a person is held or which he is bound to

pay. If a man assaults or beats another; if one shall slander his neighbor, or commit any other act, amounting to a tort or wrong, while he may be answerable in damages, yet we never speak of the amount to which the injured party may be entitled, as a debt."

In *McDonald v. Forsythe*, 13 *Mo.*, 551, it is said the "first section of our attachment law provided that creditors may sue their debtors by attachment. The words (creditor and debtor) do not in ordinary acceptation, nor in strict legal parlance, apply to any other class of demands." *Elliot v. Jackson*, 3 *Wis.*, 649. In *Hynson v. Taylor, et al.*, 3 *Ark.*, 555, it is said that the law "being in derogation of the common law must be strictly pursued. No latitude can be given, calculated to enlarge the remedy, by extending it to cases not embraced by the language adopted by the legislature, fixing the character of the demand upon which suit may be instituted by attachment. Throughout the whole statutory provisions regulating the mode of proceeding by attachment we find the words creditor, debtor, and debt, showing clearly that the relative character of creditor and debtor must have existed at the time; and that the remedy is confined exclusively to actions *ex contractu;* and that by no reasonable construction can it be made to apply to torts."

And in *Minga v. Zollicoffer*, 2 *Ired.*, 279, the language used is, that "neither in common parlance, nor in legal proceedings, is a mere wrong-doer designated as a debtor, nor his responsibility for the wrong classed under the denomination of debts. Debts are the creatures of contracts, and the language of these acts must be exceedingly strained to bring within their operation claims arising not from contract, but from tort." In a very considerable research through the books, I have been unable to find an authority which would warrant a construction of our attachment law, different from the rule enunciated in the authorities which I have so fully cited, except the excep-

tional case of *Davidson v. Owens*, 5 *Minn.*, 72, and in this case the court say that "no state has gone to such an extent as ours, for while other states confine the writ to actions *ex contractu*, Minnesota has overstepped the bounds of precedent, if not indeed of prudence, and allows its issue upon proper showing in all actions for the recovery of money, commenced in the district court, without ever making a distinction between actions in tort and those arising on contract." And in this case, it seems not only to be conceded that the state has overstepped the bounds of precedent, but perhaps also the bounds of prudence, and this is all that need be said with respect thereto. I think no well sustained authority can possibly be found which would favor the issuance of an attachment in an action for tort, upon the bare, uncertain estimate of the plaintiff himself, and under no circumstances without some direct, express statutory provision, clearly allowing such extraordinary proceeding under the necessary restrictions. It certainly would be a dangerous practice, and might lead to great abuse.

One illustration is sufficient. A plaintiff could sue the defendant in action for tort, estimating the damages at thousands of dollars, and by attachment, levy upon the personal property of the defendant to the full amount of the estimate he makes, and hold such property a long time, but when his suit is tried it is clearly shown that he had no cause of action whatever; such proceeding might damage the defendant in such a way that no judgment for money could compensate him. So upon authority as well as upon principle, our attachment law cannot be construed to extend to actions for tort, and therefore the judgment of the district court, in over-ruling the motion to discharge the attachment, must be reversed, the motion sustained and judgment be entered that the

attachment be discharged, and cause remanded for further proceedings.

REVERSED AND REMANDED.

MAXWELL, J., concurred.   LAKE, Ch. J., before whom the cause was tried below, did not sit.