[No. 1251.]

THE STATE OF NEVADA, EX REL. JACOB SPRINGER, RELATOR, v. C. S. PREBLE, SURVEYOR GENERAL AND EX-OFFICIO LAND REGISTER OF THE STATE OF NEVADA, RESPONDENT.

STATE LANDS — APPLICATION FOR — PREFERRED RIGHT TO PURCHASE — WHEN MANDAMUS SHOULD ISSUE.—Where there is but one applicant claiming a preferred right to purchase lands under the act of 1873, entitled "An act to provide for the selection and sale of lands that have been, or may hereafter be, granted by the United States to the state of Nevada," the register should proceed at once, under the provisions of the statute, and enter into a contract with the applicant, provided his claim presents a *prima facie* case, and was filed "within six months after the date of approval to the state of the lands occupied or possessed by him;" and his duty in this respect, being ministerial, may be enforced by *mandamus.*

IDEM—APPLICATION—REQUISITES OF.—The claimant of a preferred right need not, under the act, set forth in his application the facts upon which his occupancy or possession is based, so as to enable the register to determine therefrom whether the applicant possesses the requisite qualifications prescribed by the statute.

### ON REHEARING.

PUBLIC LANDS—PURCHASE OF LANDS GRANTED TO STATE—PREFERRED APPLICANT ENTITLED TO 640 ACRES—STATUTES CONSTRUED.—Under the act of 1881 (Stat. 1881, 115) amending the act of 1873 entitled "An act to provide for the selection and sale of lands that have been, or may hereafter be, granted by the United States to the state of Nevada," as further amended by the act of 1885, (Stat. 1885, 105,) an applicant claiming a preferred right of purchase is not limited to 320 acres, but is entitled to 640 acres.

APPLICATION for mandamus.

*A. C. Ellis*, for Relator.

*R. H. Lindsay*, for Respondent.

I. The register, when acting on applications to purchase land of the character set forth in petition, acts judicially—with judgment and discretion. (*Litchfield* v. *Register and Receiver*, 9 Wall. 577; *Gaines* v. *Thompson*, 7 Wall. 347; *U. S.* v. *Seaman*, 17 How. 225; *U. S.* v. *Guthrie*, 17 How. 284; *U. S.* v. *Commissioner of Land Office*, 5 Wall. 563:)

II. Neither occupancy or possession of the premises, nor any part thereof is shown by the affidavit. (*Sankey* v. *Noyes*, 1 Nev. 68; *Brown* v. *Roberts*, 1 Nev. 402; *Staininger* v. *Andrews*, 4 Nev. 59; *Robinson* v. *Imperial S. M. Co.*, 5 Nev. 44; *Kraft* v. *Carlow*, 9 Nev. 20; *Eureka M. & S. Co.* v. *Way*, 11 Nev. 171; *Lechler* v. *Chapin*, 12 Nev. 65; *Courtney* v. *Turner*, 12 Nev. 345; *Rivers* v. *Burbank*, 13 Nev. 399.)

III. Having acted, by deciding against relator's claim of possession, the writ of mandamus cannot be used as a writ of error or review to reverse the decision of the register, and the writ should be denied. (*State ex rel. Treadway* v. *Wright*, 4 Nev. 119; *State ex rel. Hetzel* v. *Eureka Co. Com.*, 8 Nev. 309.) It sufficiently appears from the pleadings in the case that the right to purchase the lands in dispute is claimed by "other persons not parties to the proceedings before the court," hence the writ should be denied. (*State ex rel. Elliott* v. *Guerrero*, 12 Nev. 105.)

By the Court, HAWLEY, J.:

This is an application for the writ of *mandamus* to compel respondent to enter into a contract with relator for the sale of certain lands. Relator, on the thirtieth day of August, A. D. 1882, presented to the surveyor general and *ex officio* land register of this state a written application to purchase certain lands under the provisions of the act entitled "An act to provide for the selection and sale of lands that have been, or may hereafter be, granted by the United States to the state of Nevada." (Stat. 1873, 120.) On the same day and at the same time, three other persons presented similar applications for the purchase of portions of the same lands. These several applications were filed and treated by the register as simultaneous applications. The lands described in said applications were listed to the state on the third day of March, 1883. On the third day of September, 1883, relator presented to and filed with the register a claim of preferred right to purchase the lands under the provisions of section 12 of the act of 1873. Neither of the other parties, or any one else, presented any claim of preferred right. On the twenty-seventh of November, 1885, the register certified the several applications to the district court in and for the county of Churchill, where said lands are situate, and said court, for want of jurisdiction, remanded the applications back to the register. Relator subsequently made a demand upon the register to enter into a contract with him for the purchase of said lands, according to law, and such demand was refused.

If respondent, in the performance of the duties required of him by the statute, had the right to exercise his judgment or discretion in acting upon relator's application for a preferred right, then the writ should be denied.

Section 12 of the act of 1873 reads as follows: "An occupant or party in possession shall have a preferred right to purchase, not exceeding three hundred and twenty acres of land, at the minimum price, for the period of six months after the date of approval to the state of the lands occupied or possessed by him or her; and when two or more persons, claiming a preferred right, by reason of occupancy or possession, apply to purchase the same lands, the register shall certify such applications to the district court of the county in which such lands are situated,

and notify the contesting applicants thereof. The judge or court shall then appoint a commissioner, in the vicinity of the land so in dispute, to take and report to such court all the testimony of the parties in the case. The contest shall then be tried and determined as ordinary actions in said court; and, when so determined, shall be certified to the register, who shall proceed thereafter with the successful contestant, in the same manner as if he alone had applied in the premises: * * * and provided further, that a preferred right shall be based upon occupancy or possession, dating prior to any application to purchase the land having been filed with the register. When two or more persons, neither claiming a preferred right, apply to purchase the same lands, the first applicant shall be allowed to purchase."

In contested applications, the register is not vested with any discretionary power whatever. His duty is clear and imperative. He must "certify such applications to the district court of the county in which such lands are situated, and notify the contesting applicants thereof." He cannot, in such cases, exercise any judgment or discretion. He has nothing to do in passing upon or determining the sufficiency of the respective applications. It was evidently the intention of the legislature that the disputed questions of fact arising under the operation of the law should be heard and determined by the courts. If there should be but one applicant claiming a preferred right, then the legislature intended that the register should proceed under the provisions of the statute, and enter into a contract with the applicant, if his claim was filed within time, and presented a *prima facie* case.

There is no provision in the act requiring an applicant for a preferred right to set forth the facts upon which his occupancy or possession is based, so as to enable the register to determine therefrom whether the applicant possessed the requisite qualifications prescribed by the statute. The relator, in making his application, used a printed form of "affidavit of preferred right," filled in the blank spaces, and stated on oath as follows: "I am the identical Jacob Springer who made application to the state land register of the State of Nevada on the thirtieth day of August, 1882, according to law, to purchase the following described lands: * * * containing six hundred and forty acres of land, more or less. I claim a preferred

right to purchase the same under section 12 of an act approved March 5, 1873, * * * and the acts amendatory thereof and supplementary thereto, and base my claim upon occupation or possession, dating prior to any application to purchase the same, viz., from the month of September, 1876. I have placed permanent improvements on said land of the value of seventy-five dollars, consisting of an irrigating ditch and levee. I also have included said land in my claim by fencing and using sloughs as my boundaries."

This statement, in so far as it attempts to state the facts upon which his occupancy or possession is based, is very imperfect and indefinite, and, if the register was invested with any discretionary power, would be so unsatisfactory as to justify him in refusing to act. But in examining all the provisions of the statute we are forced to the conclusion that the legislature did not intend to clothe the register with any such power, and that it was his duty in this case to enter into the contract with relator for the purchase of the land.

It is therefore ordered that the peremptory writ issue as prayed for, and that it be directed to the present surveyor general and *ex officio* land register of this state.

Chief Justice LEONARD did not participate in this decision.


By the Court, HAWLEY J., on rehearing.


Respondent in his petition for rehearing claims—for the first time—that when relator's "application to purchase was made, and affidavit of preferred right filed, a party was entitled to a preferred right to only three hundred and twenty acres of state lands." This claim is based upon the theory that under the provisions of section 3 of the act fixing the price, and defining the amount of land allowed to each applicant, (Stat. 1881, 115,) the first applicant is the only party entitled to purchase six hundred and forty acres of land. Section 3 reads as follows: "All agricultural and grazing lands selected under the two-million-acre grant of June 16, 1880, may be sold in tracts equal to one section to each applicant, notwithstanding such applicant may have heretofore purchased three hundred and twenty acres of the state."

A rehearing was granted for the purpose of considering the

question whether this statute applies to applicants claiming a pre-ferred right as well as to first applicants.

It is conceded that the lands in question are of the character designated in section 3. In determining the question at issue, the various statutes relating to the sale and purchase of state lands must be considered *in pari materia.* Section 12 of the act of 1873, in direct terms, limits the applicant of a preferred right to three hundred and twenty acres. The same limitation is expressed in section 13 of the act of 1873 as to all applicants. "No person shall be allowed to purchase more than three hundred and twenty acres of land from the state under the provisions of this act." (Stat. 1873, 124, Sec. 13.) Thus the law stood until 1881, when the legislature declared in an inde-pendent act that certain lands might be sold "in tracts equal to one section to each applicant," and that "all acts and parts of acts heretofore passed, so far only as they conflict with the pro-visions of this act, are hereby repealed." (Stat. 1881, 116.) The effect of the statute of 1881 was to repeal the limitation of the number of acres expressed in section 12, as well as in sec-tion 13, of the act of 1873, and to extend the amount of land which each applicant might be allowed to purchase to six hundred and forty acres. The statute is not susceptible of any other construction. No distinction was made, or intended to be made, as to the amount of land which any applicant of either class might purchase. It is apparent, upon an examina-tion of the various statutes upon this subject, that the legislature never intended to be guilty of the absurdity and injustice of allowing an applicant who simply made the first application to purchase lands, without ever having had any occupation or possession thereof, six hundred and forty acres, and limiting the right of an applicant who had occupied and possessed the land—and for that reason was allowed a preferred right—to only three hundred and twenty acres.

The respondent, to maintain his case, relies upon the further fact that in 1885 section 12 of the act of 1873 was changed so as to give an occupant or party in possession "a preferred right to purchase all the land that he or she may be entitled to pur-chase." (Stat. 1885, 105, Sec. 13.). This fact, however, does not give any strength in support of respondent's views; but, on the other hand, it is in perfect harmony with the construction which we have given to the statute of 1881, and, when read

and considered in connection with the previous statutes, clearly shows that it was always the intention of the legislature, when enacting laws upon this subject, to give both classes of applicants the right to purchase the same amount of land. The act of 1885 was intended to embrace the entire law of the state relative to the "selection and sale of lands," and the legislature incorporated therein many, if not all, of the essential provisions of the act of 1873, with such changes as had been made by the subsequent acts, including the act of 1881, and added such other provisions as were deemed necessary to make a complete law upon the subject; hence when section 12 of the act of 1873 came up for review, it was so changed as to conform to the then existing law, and section 13 of the act of 1873 was likewise changed, so as to read substantially the same as section 3 of the act of 1881, providing for the sale of lands "in tracts equal to one section to each applicant;" and this is the only section defining the amount of land that any applicant of either class is entitled to purchase. The statutes referred to are too plain to require any further comment or discussion.

Let the writ of *mandamus* issue as heretofore ordered.

LEONARD, C. J., (*concurring.*) Without expressing any opinion as to the correctness of the reasoning and judgment of the court heretofore filed herein, but deeming the same law of the case, I concur in this opinion and order.