## SHELBY *et al.* v. ZIEGLER.

No. 2131, Okla. T.   Opinion Filed December 21, 1908.

(98 Pac. 989.)

1.   JUDGMENT —Conclusiveness—Exemptions.   A judgment on a motion to discharge an attachment, on the ground that the prop· erty seized under such writ was exempt, is not **res judicata** in a subsequent direct proceeding in another action brought to subject the property to the judgment rendered in the action in which such attachment writ was issued.

2.   HOMESTEAD—Exemption—Judgment for Tort.   After the receiver's final receipt or certificate has been issued, the homestead, under Act Cong. May 20, 1862, c. 75, sec. 4, 12 St. 394. Rev. St. U. S. c. 5, sec. 2296 (U. S, Comp, St. 1901, p. 1398), is not exempt as against an execution, or other proceedings, on a judgment for tort, independent of any contract, rendered on a date subsequent to the issuance and delivery of such receipt or certificate.

3.   SAME—Expiration of Exemption.   The exemption from liability for debts, as provided by section 2296, **supra,** no longer applies to such homestead, after final proof has been made and receiver's final certificate has been issued therefor.

4.   APPEAL—Review—Necessity for Motion for New Trial... Quaere: Can a judgment be reviewed in this court where there is no motion for a new trial filed in the nisi prius court; the record showing that the case, by consent of both parties, was submitted to the court without the intervention of a jury, upon motion for judgment on the pleadings and certain admitted facts?

5.   FRAUDULENT   CONVEYANCES— Consideration — Promise   to Support Grantor.   A deed executed by a party who is insolvent. the liability then existing on which an action to set aside such conveyance is based, the consideration for the deed on the part of the grantee being his promise to support and maintain the grantor during his natural life, is in legal effect a conveyance of property to the grantee by the grantor in trust for himself, and is fraudulent and void as to existing creditors of the grantor.

6.   SAME—Remedies of "Creditors"—Claims for Torts.   The plaintiff in an action for a tort committed, independent of any contract, is a "creditor" so as to entitle him to maintain an action under section 906, Wilson's Rev. & Ann. St. 1903, to have canceled and set aside a conveyance of real estate, or any interest therein, made for the purpose of hindering, delaying, or defrauding creditors.

(Syllabus by the Court.)

*Error from District Court, Kay County.*

Action by George Ziegler against Samuel O. Shelby and another. Judgment for plaintiff, and defendants bring error. Affirmed.

On the 12th day of November, A. D. 1906, the defendant in error as plaintiff, instituted an action in the lower court against Samuel O. Shelby and Adam F. Sitton, the plaintiffs in error, as defendants, alleging: That on the 26th day of November, A. D. 1904, said plaintiff filed his petition in the district court of Kay county, Oklahoma Territory, wherein he was plaintiff and Samuel O. Shelby was defendant, declaring in damages against said defendant for an assault and battery, in the sum of $5,000, and on the 28th day of September, A. D. 1905, said plaintiff obtained a verdict in said cause against said defendant in the sum of $1,250, and the costs therein expended in the sum of $75.40, and that judgment was accordingly rendered in said court thereon in favor of said plaintiff and against said defendant, and said plaintiff was then and there the owner of said judgment. That on the 23d day of October, A. D. 1905, plaintiff caused an execution to issue thereon against the said defendant, which was duly returned *nulla bona*. And, further, that said defendants, Samuel O. Shelby and Adam F. Sitton, with intent, purpose, and design, fraudulently and connivingly caused to be made and delivered on the 19th day of September, A. D. 1905, by the said Shelby to the said Sitton, a certain general warranty deed, conveying the N. W. 1/4 of section 32, township 28 N., range 2 E. of the Indian Meridian, in said county, containing 160 acres of land, more or less, and on the 28th day of September, A. D. 1905, the said deed was offered for record in the office of the recorder of deeds of said county by the said defendant, Shelby; the consideration therefor being, to wit, the maintenance and furnishing all necessaries during the life of the grantor. That said conveyance was made by both the grantee and grantor in anticipation and apprehension of the rendition of said judgment against said Shelby, and was fraudulently, designedly, and connivingly made by said parties for the sole, ex-

press, and fraudulent purpose, of hindering, delaying, and defeat-
ing plaintiff's claim by virtue of said judgment. That at the time
said conveyance purports to have been made, and ever since said
date, said defendant, Samuel O. Shelby, has had no other or fur-
ther property which could have been or can be subjected to the
payment of said judgment obtained in said action, and that such
was well and truly known to the defendant, Sitton, at the time
said conveyance was executed and delivered to him. That said
land is worth a sum over and above all liens thereon in an amount
sufficient to fully satisfy plaintiff's judgment. Then follows the
prayer for the cancellation of said deed and the subjecting of said
land to the satisfaction of said judgment.

On the 30th day of March, A. D. 1906, said defendants filed
in said cause their plea, in the nature of a plea in bar, wherein
they substantially set out the facts as to said action begun on the
26th day of November, A. D. 1904, and that on said date said
plaintiff duly filed his affidavit in attachment and caused to be is-
sued in said cause an order of attachment, which was levied on
said land as the property of the defendant, Samuel O. Shelby,.
which was duly appraised in accordance with law; that on the
28th day of March, A. D. 1905, said Shelby, as defendant in said
cause, filed in said court his motion to dissolve and discharge
said attachment, and said motion was duly heard on the 3d day
of April, A. D. 1905, and the same was discharged, on the ground,
as the court held and concluded, that said land was exempt from
the liability alleged to have been incurred by the said Samuel O.
Shelby to the said plaintiff, George Ziegler, in said cause; that said
judgment on the motion that said attachment be dissolved is a
final judgment; and that all the matters and things sought to be
litigated by the plaintiff herein, which are material in determin-
ing the rights of the plaintiff, have been and are fully and com-
pletely determined and adjudicated by the judgment of the court in
its action on said motion. On the 6th day of April, A. D. 1906,
the court sustained a demurrer to said plea in the nature of a plea

in bar, to which action the defendant duly saved his exceptions. On the 16th day of April, A. D| 1906, said defendants filed answer, wherein they denied each and every allegation of plaintiff's petition not herein specifically admitted. They admit that on the 26th day of November, A. D. 1904, the plaintiff filed his petition in the district court of Kay county, Oklahoma Territory, against Samuel O. Shelby, one of the defendants, and that the allegations in plaintiff's petition are substantially as charged in plaintiff's petition in said cause. They further admitted: That on the 28th day of September, A. D. 1905, the plaintiff obtained a judgment against the defendant, Samuel O. Shelby, in the sum of $1,-250 and costs, and that said judgment was a valid, subsisting, and final judgment; that on the 23d day of October, A. D. 1905, the plaintiff caused execution to issue on said judgment, which was returned *nulla bona;* and that the defendant, Samuel O. Shelby, executed to Adam F. Sitton, his codefendant, the deed as alleged in plaintiff's petition.

Defendants allege: That said land which the plaintiff seeks to have applied to the payment of said judgment against said Shelby was on the 14th day of July, A. D. 1904, and for two months thereafter, government land upon which the defendant, Samuel O. Shelby, had his homestead entry; but that the legal title in and to said land was on said date in the United States of America, and no patent had issued for said land until the 3d day of April, A. D. 1906, on which date patent for said land was issued by the United States to the defendant, Samuel O. Shelby; that on the 14th day of September, A. D. 1904, the receiver's final receipt issued to said Shelby for said land; that said defendant, Samuel O. Shelby, was, and had been during all the times above set forth, a resident of Kay county, Oklahoma Territory; that the liability on which the judgment was rendered against the defendant, Samuel O. Shelby, on the 28th day of September, A. D. 1904, and long prior to the date of the issuance of the patent by the United States of America to the said defendant, Samuel O. Shelby,

and while the title to said land was in the United States; that said land was not liable for the satisfaction of said judgment, for the reason that the liability accrued long prior to the issuance of the patent therefor.

Thereafter, the plaintiff demurred to all that portion of the defendants' answer, except the general denial and admissions therein, upon the ground that the facts stated were not sufficient to constitute a defense in favor of defendants and against the plaintiff. On the 6th day of October, A. D. 1906, the court sustained the plaintiff's demurrer to the answer of the defendants, to which exceptions were duly saved.

On the 11th day of October, A. D. 1906, the plaintiff filed and presented his motion for judgment on the pleadings. On the same day, said cause coming on for trial, the following proceedings were had, to wit:

"Mr. Moss: It is hereby stipulated and agreed by and between George Ziegler, plaintiff, and Samuel O. Shelby and Adam F. Sitton, defendants, that the trial of this cause shall proceed at this time to the court— The Court. To be heard upon the motion for judgment on the pleadings, and the following admissions, to be submitted to the court. Mr. Moss: That the defendant Samuel O. Shelby had no other property in Kay county, Oklahoma Territory, or in the territory of Oklahoma, on the 19th day of September, 1905, than the real estate in question in this litigation, and personal property of the value of $——. And it is further admitted and agreed that the defendant, Samuel O. Shelby, has not had at any time since said date any other or further property than the said real estate, and the said personal property of the value of $——. And it is further stipulated and agreed by and between the parties hereto that said Samuel O. Shelby was, on the 19th day of September, 1905, and for many years prior thereto, and ever since has been a single and unmarried man. The Court: At this time the court, upon motion for judgment upon the pleadings, and the admissions made in open court, finds the issues for the plaintiff and against the defendant, and enters judgment for the plaintiff as prayed for in his petition, and an exception is noted. Mr. Cline: Yes, to which the defendant excepts. We would like to have about 20 days to give a super-

sedeas bond, and would like a reasonable time to make and serve a case-made for the Supreme Court.   The Court:   An exception is noted, and the defendant will be given 20 days to file a super-sedeas bond, and the defendants are given 90 days in which to make and serve a case-made for the Supreme Court, the plaintiff 20 days to suggest amendments, and 5 days' notice in writing by either party to sign and settle the case-made."

No motion for a new trial was filed or presented.

W. S. Cline and Claude Duval, for plaintiffs in error.

G. A. Chappell and Moss & Turner, for defendant in error.

WILLIAMS, C. J. (after stating the facts as above).   In order to dispose of this case, it is necessary to consider the following propositions:   (1)   Is a judgment on a motion to discharge an attachment, on the ground that the property seized under such writ was exempt, res judicata in a subsequent direct proceeding, or other action against such property?   (2)   After the receiver's final receipt or certificate has been issued therefor, is the homestead exempt as against execution, or other proceedings, on a judgment for tort, independent of any contract; such judgment having been rendered on a date subsequent to the issuance and delivery of such receipt or certificate?   (3)   Does the exemption from liability for debts, as provided by section 2296, Rev. St. U. S. (U. S. Comp. St. 1901, p. 1398), apply to such homestead after final proof has been made and receiver's certificate issued therefor?   (4)   Can a judgment be reviewed, where there is no motion for a new trial; the record showing that a jury was waived and said cause was to be heard by the court, upon motion for judgment on the pleadings and the admissions of fact submitted to the court?   (5)   Does a deed, reciting "maintenance and furnishing all necessaries during the life of the grantor" as the consideration therefor, raise such a presumption of fraud, or the grantor retain such an interest and benefit in the property attempted to be conveyed, as to render the same fraudulent and void upon its face as to the rights of the plaintiff?   (6)   Is the plaintiff, in an action for a tort committed, independent of any contract, a creditor, so as to entitle

him to maintain an action under section 906, Wilson's Rev. & Ann. St. 1903, to have cancelled and set aside a conveyance of real estate, or any interest therein, made for the purpose of hindering, delaying, or defrauding creditors?

1. Section 4365, Wilson's Rev. & Ann. St. 1903 (chapter 66, art. 11, § 167), provides upon what grounds an attachment may issue, either at or after the commencement of an action upon the property of the defendant. Section 4366 of the same chapter provides that the order of attachment shall be made and issued by the clerk of the court in which the action is brought, upon any of the grounds set out in section 4365, *supra*, upon the affidavit of the plaintiff, his agent or attorney, showing first, the nature of the plaintiff's claim, second, that it is just, third, the amount which the affiant believes the plaintiff ought to recover, and, fourth, the existence of some one of the grounds for an attachment enumerated in said section 4365. Section 4368 of the same chapter provides that the order of attachment shall be directed to the sheriff, requiring him to attach the lands, tenements, goods, chattels, stocks, rights, credits, moneys, and effects of the defendant in his county, not exempt by law from being applied to the payment of the plaintiff's claim, or so much thereof as will satisfy the plaintiff's claim, to be stated in the order as in the affidavit, and the probable cost of the action not exceeding $50. Section 4415 of the same chapter provides that the defendant may at any time before judgment, upon reasonable notice to the plaintiff, move to discharge the attachment, as to the whole or part of the property attached.

In the case of *Carnahan v. Gustine,* 2 Okla. 405, 37 Pac. 594, the *nisi prius* court on motion dissolved the attachment and discharged the attached property. That was a proceeding under sections 4118 and 4119 of the Statutes of 1893 (sections 4415, 4416, Wilson's Rev. & Ann. St. 1903), and the court held that such proceeding must stand or fall upon the truth or falsity of the affidavit for attachment; but no question was there involved

as to whether or not the attachment as to exempt property could be vacated in such a proceeding.

The case of *Lane Implement- Co. v. Lowder et al.,* 11 Okla. 63, 65 Pac. 926, was an action commenced by the Lane Implement Company in the probate court of Pawnee county on a forthcoming bond, executed by the defendant in an attachment proceeding begun before a justice of the peace, which was levied on certain property of the defendant, Lowder.   The court said:

"If the attached property was exempt, that question should have been raised and litigated in the original action, and the presumption is that it was.   At any rate, the judgment of the court sustaining the attachment is conclusive until reversed in that particular case, and it cannot be considered when raised for the first time in this action on the forthcoming bond; and, then, it has been held that, by giving a forthcoming bond, one is estopped from denying that the property returned under it is the property of the party who gave the bond, or that the property was subject to attachment. *Bowden et al. v. Burnham et al. and Barnes et al. v. Same,* 59 Fed. 752, 8 C. C. A. 248; *Sponenbarger v. Lemert,* 23 Kan. 55; *Haxlun v. Sizer,* 23 Kan. 310; *Wolf v. Hahn,* 28 Kan. 588; *Case Bishop & Co. v. Shultz & Hosea,* 31 Kan. 96, 1 Pac. 269; *Peterson v. Wollen,* 48 Kan. 770, 30 Pac. 128, 30 Am. St. Rep. 327; *Greenville National Bank v. Evans-Snyder-Buel Co.,* 9 Okla. 353, 60 Pac. 249.   But ignoring that question altogether, the judgment of the justice of the peace sustaining the attachment, until vacated, is *res judicata* as to every question which was litigated in that action, and the defendants in this case are bound thereby.   The court, instead of sustaining the defendants' motion for judgment in their favor, should have overruled it, because their answer, as heretofore stated, showed clearly that they had absolutely no defense."

As to the rules announced in this case, in so far as the same are in conflict, if any, with the rule hereinafter declared, we decline to follow same.

In the case of *Brunson v. Merrill,* 17 Okla. 44, 86 Pac. 431, following the case of *Watson v. Jackson.* 24 Kan. 442, it is held that:

"The decision of a motion before a justice of the peace, to

discharge from seizure certain property taken on attachment, on the ground that it is exempt, is not conclusive, and the question of exemption may be tried thereafter in an action of replevin brought by the judgment debtor."

In the case of *Sparks v. City National Bank of Lawton et al.* 21 Okla. 827, 97 Pac. 575, Mr. Justice Turner, speaking for the court, said:

"We heartily condemn the practice pursued in this case of permitting plaintiff in error to move to dissolve the attachment, instead of requiring her to interplead for the attached property; but, in view of a long line of Kansas cases recognizing the practice, we will not disturb it. With the practice thus established, and which we follow reluctantly, there can be no question as to the right of the plaintiff in error to file her motion to dissolve the attachment upon the ground that the lots levied upon were her property."

The court further held in that case that the motion to set aside the judicial sale is addressed to the reasonable discretion of the court, and, in the absence of an abuse of that discretion, this court will not interfere, and that the final decision of the court upon such motion is not conclusive as to the ultimate rights of either party.

In the case of *Heidel v. Benedict,* 61 Minn. 174, 63 N. W. 491, (31 L. R. A. 422, 52 Am. St. Rep. 592), the court said:

"It appears that, before this action was commenced, the assignee had intervened in the suit between Benedict and Heidel, and made a motion to dissolve the attachment, and that the court denied the motion. It is now claimed that, under this decision, the validity and priority of the attachment lien is *res judicata.* But it is well settled that the determination of a motion or summary application is not *res judicata,* so as to prevent the parties from drawing the same matter in question again in the more regular form of an action. .2 Black, Judgm. § 391; *Kanne v. Minneapolis & St. L. Ry. Co.,* 33 Minn. 419, 23 N. W. 854."

Sections 1171 (Laws 1866, Rev. St. 1866, p. 424, tit. 8, c. 3, art. 1, subdiv. 1, § 198), 1172 (Laws 1866, Rev. St. 1866, p.

425, tit. 8, c. 3, art. 1, subdiv. 2, § 199), 1174 (Laws 1866, Rev. St. 1866; p. 426, tit. 8, c. 3, art. 1 subdiv. 2, § 201), 1208 (Laws 1866, Rev. St. 1866, p. 432, tit. 8, c. 3, art. 1, subdiv. 6, §235), of Cobbey's St. Neb. 1907; section 3294, 3295, 3297, and 3313, Code Civ. Proc. Idaho 1901; sections 4215, 4216, 4218, and 4223, Rev. Laws Minn. 1905; sections 205, 207, 209, and 223, Revised Codes S. D. 1903; and sections 537, 538, 540, and 556, vol. 3, Kerr's Cyclopedic Codes of California—are substantially the same as sections 4365, 4366, 4368, and 4415, ·Wilson's Rev. & Ann. St. 1903, *supra.*

In the case of *Quigley et al. v. McEvony,* 41 Neb. 73, 59 N. W. 768, the court said:

"The motion to dissolve the attachment was made on the grounds that the order of attachment was wrongfully sued out, want of jurisdiction of the court to grant the writ, the untruth or falsity of the allegation of nonresidence of Sarah A. Quigley, the defendant in the attachment suit, and that the property levied upon was the homestead of the defendants in the case.  The main propositions to be decided at such a hearing are:  First, the sufficiency of the affidavit; second, the falsity of the charge in the affidavit filed to obtain the issuance of the writ of attachment. Whatever matters may be in some cases necessarily or properly heard and determined, we do not think it is competent or proper practice, where the writ is levied upon real estate belonging to the debtor, to allow the homestead character of the property to be drawn in question as one of the grounds for the motion to discharge the attachment.  The hearing is upon affidavits, more or less skillfully drawn, according to the ability or lack of the same in this particular branch, of the party who frames them, or his artistic skill, or want of it, in the affidavit line.  We think it is unquestionable that the question of whether the premises constitute a homestead should be determined in proceedings instituted in the manner directed by our statutory law, and, if there is any . disagreement, then the same be determined in a proper action in court, in which issues can be regularly joined, and the matter tried in the manner prescribed for the trial of issues of law and fact, and that the ends of justice will be better subserved by this latter course of proceedings than by the determination of the

homestead question in the course of a hearing on a motion to discharge an attachment."

In the case of *Mason et al. v. Lieuallen,* 4 Idaho, 415, 39 Pac. 1117, the foregoing excerpt from the case of *Quigley v. McEvony, supra,* is quoted with approval, and there held that it is not competent or proper practice to determine the homestead character of property in a judgment in a motion to discharge the attachment.

In the case of *Davidson v. Owens,* 5 Minn. 74 (Gil. 55), Mr. Chief Justice Emmett, speaking for the court, said:

"The last objection urged, that the property attached is not the subject of attachment, cannot, if true, avail the defendants in this proceeding. The question here is as to the validity of the warrant of attachment, and, if the warrant has been properly issued, it cannot be vitiated by any irregularity of the officer in executing it. The writ may be no defense to the officer for taking property not subject to attachment, but the taking of such property affords no ground for vacating the writ."

In the case of *Pech Mfg. Co. v. Groves,* 6 S. D. 508, 62 N. W. 110, the court said:

"As to the objection urged in appellant's brief that the land levied upon is appellant's homestead, and therefore exempt from attachment, was not presented in the motion to discharge the attachment, and there is nothing in the record to indicate that the land, at the time of the levy, possessed any homestead characteristics, we are not called upon to consider whether, in any event, upon a motion to dissolve an attachment, the homestead right may be litigated and determined, and such property released from the levy. It would seem, however, that the seizure of property exempt under the homestead laws affords no ground for vacating an attachment. *Davidson v. Owens,* 5 Minn. 69 (Gil. 50.)"

In the case of *Risdon Iron & Locomotive Works v. Citizens' Traction Co. of San Diego,* 122 Cal. 96, 54 Pac. 530 (68 Am. St. Rep. 25), the court said:

" * * * Respondent claims that an order for the release of attached property on the ground that it is not liable to seizure under the writ is not an order dissolving the attachment. To us, however, it seems that as regards the property released the attachment is as effectually dissolved by such an order as if the writ

were quashed.   The provision of section 963, giving the right of appeal, is in terms directed to an order dissolving an attachment. The words 'an attachment' in this connection are quite broad enough to include seizure and custody under the writ as well as the writ itself.   Thus it is common to say that final judgment for defendant has the effect to dissolve a prior attachment—an expression which has no regard to any question whether the writ was properly or regularly issued."

It is earnestly contended by plaintiff in error that the judgment on the motion to discharge the attachment, on the ground that the property seized under the writ was exempt, is *res judicata,* and the case of *Commissioners of Wilson County v. McIntosh,* 30 Kan. 239, is cited, wherein the court said:

"We are aware that this court has already held the decisions of certain motions not conclusive, such as motions to set aside sales (*White-Crow v. White-Wing,* 3 Kan. 276; *Harrison v. Andrews,* 18 Kan. 535; *Halsey v. Van Vliet,* 27 Kan. 474), motions to discharge property from seizure on attachment on the ground that it is exempt (*Watson v. Jackson,* 24 Kan. 442), as to which motions some at least of the considerations above suggested apply. As to them, we may remark that they date from an early period in the history of this court, and, being but the settling of a rule of practice, ought not lightly to be disturbed.   But outside of such motions and those of a kindred nature, we think that, with the limitations suggested, it is wiser to follow the indications of our statutes and the later decisions, and hold that a question once clearly and fully decided with right of special and separate review may be *res judicata,* even though such decision was only an order upon a motion."

We have set out at length excerpts from decisions of the Supreme Courts of Nebraska, Idaho, Minnesota, and South Dakota, and referred to the similarity of the statutes of said states to ours, for the purpose of showing that it is not considered in such states good practice to have a levy under a writ of attachment vacated, on the ground that the property is exempt, or belongs to some person other than the defendant in such action.   However, such practice has been long recognized by the Kansas courts, and acquiesced in by the Supreme Court of the territory of Oklahoma

in the case of *Brunson v. Merrill, supra,* and followed by this court in the case of *Sparks v. City National Bank of Lawton, supra,* and such seems to be the recognized practice in the courts of California (*Risdon Iron & Locomotive Works v. Citizens' Traction Co. of San Diego, supra*), which state has a similar statute to our own. It is very probable that the fact that motions were entertained to have property discharged from attachment, on the ground that same was exempt, not by virtue of any express statute, but by an apparently assumed discretion, originally induced the Kansas courts to hold that the judgments on such preliminary motions were not *res judicata.* We do not feel, under the circumstances, that we would be justifiable in disturbing this settled rule of practice; but, outside of such motions and those of a kindred nature, we think it is wiser to hold that a question once clearly and fully decided, with right of special and separate review, may be *res judicata,* even though such decision was only an order upon a motion.

2.   Rev. St. U. S., c. 5, § 2296 (U. S. Comp. St. 1901, p. 1398), provides:

"No land acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuance of the patent therefor."

The question presented by this record is whether or not a tort committed, independent of any contract, for which an action would lie at common law for the recovery of damages, but would abate with the death of the aggrieved party, is such a liability as was contemplated, and within the purview of the term "any debt contracted." There is no dearth of authorities on this question, and whilst there is apparent conflict, yet, when we closely examine the records upon which such decisions were predicated, there is in fact no actual conflict, except in one instance. These words being used in an act of Congress, we will first examine the federal decisions, and see how the words "debt" and "contract" have been

construed, as used in our federal Constitution and the acts of the Congress of the United States.

In the case of *State of Louisiana v. Mayor of New Orleans,* 109 U. S. 287, 3 Sup. Ct. 213 (27 L. Ed. 936), Mr. Justice Field, in delivering the opinion of the court, said:

"The term 'contract' is used in the Constitution in its ordinary sense, as signifying the agreement of two or more minds, for considerations proceeding from one to the other, to do, or not to do, certain acts. Mutual assent to its terms is of its very essence. A judgment for damages, estimated in money, is sometimes called by text-writers a specialty or contract of record, because it establishes a legal obligation to pay the amount recovered; and, by fiction of law, a promise to pay is implied where such legal obligation exists. It is on this principle that an action *ex contractu* will lie upon a judgment. Chitty on Contracts (Perkins' Ed.) 87. But this fiction cannot convert a transaction wanting the assent of parties into one which necessarily implies it. Judgments for torts are usually the result of violent contests, and, as observed by the court below, are imposed upon the losing party by a higher authority against his will and protest."

In the case of *Chase v. Curtis et al.,* 113 U. S. 464, 5 Sup. Ct. 556 (28 L. Ed. 1038) Mr. Justice Matthews, in delivering the opinion of the court, said:

"It is finally insisted that a judgment against the corporation, although founded upon a tort, becomes *ipso facto* a debt by contract, being a contract of record, or a specialty in the nature of a contract; but we have already seen that the settled course of decisions in the New York Court of Appeals rejects the judgment against the corporation as either evidence or ground of liability against the trustees, and founds the latter upon the obligation of the corporation on which the judgment itself rests. And it was decided by this court in the case of *Louisiana v. New Orleans,* 109 U. S. 285, 3 Sup. Ct. 211, 27 L. Ed. 936, that a liability for a tort, created by statute, although reduced to judgment by a recovery for the damages suffered, did not thereby become a debt by contract in the sense of the Constitution of the United States forbidding state legislation impairing its obligation, for the reason that 'the term "contract" is used in the Constitution in its ordinary sense as signifying an agreement of two or more minds, for

considerations proceeding from one to the other to do or not to do certain acts. Mutual assent to its terms is of its very essense.' The same definition applies in the present instance and excludes the liability of the defendants, as trustees of the corporation, for its torts, although reduced to judgment."

In the case of *Bolden v. Jensen et al.* (D. C.) 69 Fed. 746, Hanford, District Judge, in construing section 990 of the Revised Statutes (U. S. Comp. St. 1901, p. 709), which provides that "no person shall be imprisoned for debt in any state, on process issuing from a court of the United States, where by the laws of such state imprisonment for debt has or shall be abolished," said:

"The statute and the rule refer only to imprisonment for debt, and do not affect the power of the court to issue a warrant of arrest as process for compelling the defendants to respond to a claim for unliquidated damages, which is not a debt, any more than it restricts the power of the court to imprison defendants for nonpayment of fines or by the way of punishment for contempt. The word 'debt,' when used in a statute, without some plain or explicit declaration making it applicable thereto, does not include taxes nor claims for unliquidated damages. The legal definition of the word is opposed to unliquidated damages, or a liability in the sense of an inchoate or contingent debt, or an obligation not enforcible by ordinary process. Rap. & L. Law Dict.; Cooley, Tax'n, p. 13; *Lane Co. v. Oregon,* 7 Wall. 71-81, 19 L. Ed. 101."

When the right to be free from arrest and incarceration on account of debt is involved, there would be more reason, from a humane concept, to insist upon a liberal construction than when exemption of property is claimed. Section 2, art. 10, of the Constitution of Alabama, provides:

"Every homestead * * * shall be exempted from sale on execution or any other process from a court, for any debt contracted since the 13th day of July, 1868, or after the ratification of this Constitution."

In the case *Meredith v. Holmes,* 68 Ala. 191, the late Chief Justice Stone, in delivering the opinion of the court, construing the above provision, said:

"In a large majority of the cases—in fact, in all whose stat-

utes employ language similar to ours, except, perhaps, the court of Illinois—the ruling has been that the exemption does not extend to judgments and executions in actions of tort.   *   *   * The decision in *Conroy v. Sullivan*, 44 Ill. 451, is based on the peculiarity of their legislation.   In North Carolina, and in Wisconsin, the language of their exemptions is different from ours. * * * A tort is not a 'debt contracted,' and our exemption of the homestead does not protect it against recoveries for torts."

The rule in this case is followed in *Williams v. Bowden*, 69 Ala. 433; *Vincent v. State*, 74 Ala. 281; *Schuessler v. Dudley*, 80 Ala. 548, 2 South. 526, 60 Am. Rep. 124; *McLaren v. Anderson*, 81 Ala. 107, 8 South. 188; *Penton v. Diamond*, 92 Ala. 611, 9 South. 175; *Stuckey v. McKibbon*, 92 Ala. 622, 8 South. 379; *Dangaix v. Lunsford*, 112 Ala. 403, 20 South. 639; *Northern v. Hanners*, 121 Ala. 587, 25 South. 817, 77 Am. St. Rep. 74.

Sections 1 and 2, art. 9, of the Constitution of Arkansas of 1875 (sections 2107, 2108, Ind. T. Ann. St. 1899; §§ 2992, 2993, Mansf. Dig. Ark.), provide that certain personal property of any resident of the state, who is not married or the head of a family, in specific articles to be selected by such resident, not exceeding in value $200, and, when he is married or the head of a family, not exceeding in value $500, shall be exempt from seizure on attachment or sale on execution or other process from any court, on debt by contract.   In the case of *Cason v. Bone et al.*, 43 Ark. 17, in construing said sections of the Constitution, it is held that a debtor's personal property is not exempt from execution for a tort.   The courts of that state, in their holdings, have uniformly conformed to that rule.   *Smith v. Ragsdale*, 36 Ark. 297; *Massie et al. v. Enyart et al.*, 33 Ark. 688.   In the case of *Gaines v. Toles*, 1 Ind. T. 543, 37 S. W. 946, the United States Court of Appeals of the Indian Territory followed the rule announced by the Supreme Court of Arkansas.

In Georgia, the term "debt contracted" (Cobb's Dig. Ga. pp. 385, 389, 390) is construed in the case of *Davis v. Henson, Sheriff*,

29 Ga. 346.    Mr. Justice Lumpkin, in delivering the opinion of the court, said:

"The single question in this case is whether the homestead exemption statute in this state protects property from judgments founded on torts.    An inspection of the several acts shows clearly that they do not, but that they apply expressly and exclusively to judgments founded on contracts.    Cobb, pp. 385, 389, 390.    Whether this discrimination should be made, it is for the Legislature, and not for the courts, to decide."

Section 2505, c. 126, p. 168, Laws 13th Gen. Assem. Iowa, provides that "neither husband nor wife is liable for the debts or liabilities of the other incurred before marriage.    *    *    *"    In the case of *McElfresh v. Kirkendall et al.,* 36 Iowa, 226, wherein the word "debt" is construed, the court said:

"The words 'debt' and 'liability' are not synonymous, and they are not commonly so understood.    As applied to the pecuniary relation of parties, liability is a term of broader significance than debt.    The legal acceptation of debt is a sum of money due by certain and express agreement.    Black. Com. book 3, 154.    Liability is responsibility; the state of one who is bound in law and justice to do something which may be enforced by action.    This liability may arise from contracts either express or implied, or in consequence of torts committed.    Bouvier's Law Dict.    If A. owes B. $1,000, he is indebted and liable to B. for that sum.    But if A. has spoken slanderous words of B., whereby a right of action has accrued, he has become liable, and it is only after judgment has been obtained that this liability assumes the character of a debt."

In the case of *Stauffer v. Remick,* 37 Kan. 455, 15 Pac. 584, the court said:

"The first question which arises in this case is whether Stauffer was indebted to Remick at the time the indorsement was made on the execution issued in the action of Kline v. Remick. It is not alleged in plaintiff's petition that he was so indebted. It states a jury had found a verdict in Remick's favor against him, but it is silent as to the cause of action upon which it was found. If it was upon a contract for liquidated damages, it would be a debt, not because of the verdict of the jury, but because of the lia-

bility on the contract.  If the verdict was found in an action in tort, the verdict would not be a debt.  A verdict on a cause of action resting in tort does not convert the tort into a debt.  It must be merged into a judgment before it becomes a debt."

In the case of *Thayer v. Southwick et al.*, 8 Gray (Mass.) 229, Mr. Chief Justice Shaw, in delivering the opinion of the court, said:

"The verdict did not convert it into a debt.  No action of debt would lie on it.  It could not constitute a debt till judgment should be rendered on it.  *   *   *"

In the case of *Clark v. Nevada Land & Mining Co., Lim.*, 6 Nev. 203, the court said:  "A claim for damages is not a debt. *   *   *"

In the case of *Lathrop v. Singer*, 39 Barb. (N. Y.) 398, the court said:

"The first section exempts the homestead from sale under execution for debts thereafter contracted to the value of $1,000.  The second section, after providing what shall be done to entitle any property to such exemption, declares that no property shall be exempt for sale under the act for a debt contracted for the purchase thereof, or prior to the recording of the deed or notice mentioned in the previous part of the same section.  There is no language to be found in the act indicating an intention to exempt from sale any property on judgments, except for debts contracted.  If the intention had been to extend the exemption to sales under all judgments recovered, it would have been quite easy to have so expressed it, and it is most likely if that had been the intention that it would have been so expressed in the act.  The omission to do so, and the limitation in words to debts contracted, afford pregnant evidence that the Legislature did not intend to extend its operation beyond the cases expressed.  *Schouton v. Kilmer*, 8 How. Prac. 527."

In the case of *Kenyon v. Gould et al.*, 61 Pa. 292, the provision for the exemption of certain specific articles from execution issued for debt or rent was construed, and it was held that there was no exemption under an execution on a judgment in an action *ex delicto*.

In the case of *Parker v. Savage et al.*, 6 Lea (Tenn.) 406,

which related to a controversy over a homestead, it was held that a tort was not a debt.

In the case of *Dunlop v. Keith,* 1 Leigh (Va.) 430, 19 Am. Dec. 756, the court said:

"The bill of Dunlop & Co. states the case of a misfeasance of Keith in office; a mere tort, the action for which dies with the person. It is similar, in this respect, to the case of an escape of a person in execution, by negligence of a sheriff or jailer, which makes him personally responsible for the amount of the debt; but he was answerable at the common law, not as a debtor, but as a tort-feasor, and the action died with the person, upon the maxim *'actio personalis moritur cum persona.'* 11 Vin. Abr. 244, 5; Executors, H, a, pl. 1. Is the case as stated in the bill within either that branch of the statute which gives relief against an absent debtor, or that which gives against other absent defendants relief similar to that which is given against absent debtors? The court thinks it comes within neither. Not within the first, for, although the term 'debtor' should, in the construction of this statute, be taken in its largest sense, as embracing every person against whom another has a claim for breach of contract, even where the compensation sounds in damages, yet Keith cannot be embraced by it, since his case is that of a mere tort-feasor."

In the case of *Burton et al. v. Mill et al.,* 78 Va. 483, the court said:

"In no sense is the claim of the appellee, Della P. Mill, a 'debt contracted' within the meaning of the Constitution and homestead law. Nor can it be said with any show of reason that the framers of the Constitution, by the homestead exemption, intended to give shelter and protection to evildoers."

We now refer to authorities relied on by plaintiffs in error. The case of *Flannagan v. Forsythe,* 6 Okla. 225, 50 Pac. 152, was an action *ex contractu,* and not *ex delicto,* being for damages growing out of a breach of contract warranting title to certain personal property; the judgment in that case not being based upon a tort, independent of any contract.

In the case of *Conroy v. Mary A. Sullivan et al.,* 44 Ill. 452, the court said:

Shelby *et al.* v.   Ziegler.

"It is true this case does not fall within the actual terms of the homestead act of 1851. That exempted the homestead 'from levy and forced sale, under any process or order from any court of law or equity in this state, for debts contracted from and after the 4th day of July, 1851.' The judgment in this case was not strictly a 'debt contracted.' But the law of 1857 declared it to be the object of the Legislature to prevent the alienation of the homestead in any case, except by the consent of the wife. In the light of both these laws, this court has constantly held that it was the evident intent of the Legislature to protect the homestead as a shelter for the wife and children, independently of any acts of the husband. He cannot deprive them of their right to it without the consent of the wife, either by his contracts or his torts."

In the case of *Warner v. Cammack*, 37 Iowa, 644, the court said:

"Our homestead exemption statute provides (Rev. 1860): 'Sec. 2281. It may also be sold on execution for debts contracted prior to the passage of this law or prior to the purchase of such homestead. * * *' And hereon the question is resolved to the single point whether the cause of action whereon the judgment was rendered was a 'debt,' within the meaning of that word as used in the homestead exemption statute. We hold that it was a debt, and this, because the plaintiff in that action might have waived the tort and brought his action for money paid to the use of the defendant therein. Wherever a party has derived a pecuniary advantage from a wrong done by him, and it is competent for the person suing thereon to waive the tort and maintain his action upon the promise implied by the law, there the obligation to pay is a debt, and this, regardless of the form of action in which that obligation is sought to be enforced. The measure of the recovery before the justice was not in excess of what it must have been in an action upon the implied promise. The converse of the proposition just stated must also be true, that wherever a wrong is done resulting in no pecuniary advantage to the wrongdoer, and where the action must be in tort, and sound only in damages, there the obligation to pay is not a debt until ascertained by judgment. *Johnson & Stevens v. Buller*, 2 Iowa, 535 (i. e. 545) ; *Raver v. Webster et al.*, 3 Iowa, 502 (i. e., 512), 66 Am. Dec. 96; *Lord v. Gaddis*, 6 Iowa, 58."

In the case of *Mertz v. Berry*, 101 Mich. 37, 59 N. W. 445, 24

L. R. A. 789, 45 Am. St. Rep. 379, which construed section 2, art. 16, of the Constitution of 1850, containing the words "debt contracted," the court said:

"We do not think that it was the intention of the framers of the Constitution to prohibit a voluntary alienation by the husband, and at the same time permit an involuntary alienation. It was not intended that a mortgage executed by the husband upon the homestead without the consent of the wife should be void, but that in case the husband represented that he was not married, and that the premises mortgaged were not a homestead, a judgment founded upon the fraud, and not upon the contract, could be enforced against the homestead property. In view of the language employed, the light thrown upon the use of the phrase by the record of the proceedings of the convention, the fact that the language of the existing statute upon the same subject was not adopted, and the effect which has already been given to this provision as respects alienation by the husband, the provision must be construed as exempting the homestead from execution and sale upon all judgments, whether founded in tort or in contract."

In the case of *Dellinger v. Tweed*, 66 N. C. 206, section 2, art. 10, of the Constitution of 1876, was construed, which provides that:

"Every homestead * * * shall be exempt from sale under execution, or other final process obtained on any debt. But no property shall be exempt from sale for taxes, or for payment of any obligation contracted for the purchase of said premises."

Section 3 of the same article provides that "the homestead, after the death of the owner, shall be exempt from the payment of any debt during the minority of his children or any one of them," and section 5 further provides that "if the owner of the homestead die leaving a widow, but no children, the same shall be exempt from the debts of her husband, and the rents and profits thereof shall inure to her benefit during her widowhood, unless she be the owner of a homestead in her own right." In that case the court said:

"An execution, in all cases, issues or is obtained upon a judgment. So that, instead of reading the Constitution as it is, 'shall

be exempted from sale under execution, or other final process, obtained on any debt,' we must read it as it necessarily means, to make sense, 'shall be exempted from sale under execution obtained on any judgment,' or else we must hold a judgment to mean a debt, as clearly it does. And then the manifest intention will be carried out that the homestead shall not be sold under execution at all, except in the cases named in the Constitution. But, then, it is asked, if the Constitution means 'judgment' instead of 'debt,' why did it not say so? It may just as well be asked, if it meant contract, why did it not say so? It does say plainly enough, and expressly, that it shall not be sold under execution, and that was the main idea to which the convention was advertent; and it was inadvertent in describing upon what the execution was to issue, as well it might be, because an execution cannot issue except upon a judgment."

This opinion was supported by Justices Reade, Dick, and Boyden; Chief Justice Pearson and Justice Rodman dissenting, holding that the homestead was not exempt on an execution issued on a judgment founded on a tort.

In the case of *State v. O'Neil et al.*, 7 Or. 142, the Supreme Court of that state, in construing section 2296, Rev. St., *supra*, said:

"The words 'debt contracted' do not necessarily mean debts or obligations incurred by an agreement of parties. The word 'contract' has a more extensive significance than to make an agreement. Debts contracted in the ordinary acceptation of the term will include liabilities incurred. If, for a trespass committed by a homestead claimant, a judgment for damages should be recovered against him before the issuing of a patent for the land, we hold that the homestead could not lawfully be sold on an execution issued upon the judgment after the date of the patent. The object Congress had in view, by the enactment of that law, was to secure permanent homes to settlers on the public domain, and in no event to allow them to be sold upon execution to discharge any liability incurred by the homestead claimants before the patent should issue."

In the case of *Seymour v. Sanders*, 3 Dill. 441, Fed. Cas. No. 12,690, Dillon, Circuit Judge, in delivering the opinion of the court, construing the federal homestead act, said:

"A leading object of the enactment was to benefit the poor man who was unable to buy the lands at government price and receive his title at once and without conditions, and it undoubtedly occurred to Congress that many persons who had been unfortunate and were insolvent would avail themselves of the act, and conceiving that the creditor in such cases had no equity to subject to the payment of his debts lands which had been given to the debtor by the bounty of the government, and to protect the debtor and to encourage persons to settle upon the public domain under the act, the fourth section was adopted."

The reason assigned by Judge Dillon appears to be well stated; but that it was the object of Congress, as stated in the case by the Oregon court, *supra*, to secure permanent homes to settlers on the public domain, and in no event to allow them to be sold under execution to discharge any liability incurred by the homestead claimant before the patent should issue, regardless of whether the liability was one that grew out of a contract or a tort, or evil act, independent of any contract, committed by the homesteader, we are unable to conclude. The Oregon case appears to be neither supported by good reason nor by authority.

Under the provisions of the homestead act, every person who is the head of a family, or has arrived at the age of 21 years, and who is a citizen of the United States, or has filed his declaration of intention to become such as required by the naturalization laws, shall be entitled to enter land thereunder. Act March 3, 1891, c. 561, 26 Stat. 1098, Rev. St. § 2289 (U. S. Comp. St. 1901, p. 1388). The contemporaneous enactments, acts, facts, or circumstances that induced the courts in Illinois, Michigan, and North Carolina to adopt a construction that was not justified by the technical or usual meaning of the word "debt" does not exist here. A single person, who is unmarried, and who is not the head of a family, is entitled to take a homestead under such act. In these states such a construction was followed with a view of protecting the wife and children—the family. No such reason or circumstances exist as to the federal homestead act for a court to extend the meaning of these words beyond that actually existing in law.

Whilst it was the evident intention of Congress, in donating a homestead to the homeless settler, that the title to such donated land should be acquired by him free from all debts contracted by him prior to the issuance of the patent, yet it is not to be presumed that Congress, in providing for such donation, intended that it should not be liable for the consequences of his evil and lawless acts. The federal government, not having any right to exercise any police power for the local public welfare in any state, certainly would not encourage evildoers, regardless as to whether or not the same was intended solely as a homestead for the family, to the extent of donating a tract of land, with the limitation that such tract should not be liable for such acts of such party. It never affords shelter for such consequences. Where the state courts have, by a liberal construction, in the light of accompanying statutes and of the contemporaneous acts and surroundings in the framing of exemption provisions or statutes, extended the term "debt" or "debt contracted," so as to include a liability growing out of a tortuous act, they have never reached such conclusions with a view of protecting the head of the family in his evil and wrongdoing, but that the wife and children should be relieved from the consequences of such acts.

The homestead exemption laws of the territory or of the state of Oklahoma have no application here, the party being a single person; but, if he were the head of a family, such exemption provisions would protect this homestead from subjection to this judgment. Section 2, art. 12 (Bunn's Ed. § 305), of the Constitution of Oklahoma, provides that:

"The homestead of the family shall be, and is hereby protected from forced sale, for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon.   *   *   *"

Said provision is substantially the same as that in force in the territory of Oklahoma. Sess. Laws 1905, p. 255, c. 18, art. 1, § 1. It is exclusively within the reserved police power of the several

states to enact exemption laws for the benefit of the citizens of the states for the public welfare; but Congress, having exclusive jurisdiction over the public lands, had the power to prescribe a limitation upon the grant, which would apply and be in force in the several states, and with the existing reserved power to the states, for the welfare of their citizenship, in the face of the rule that limitations and restrictions are to be strictly construed, there is nothing to indicate that Congress used the words "debts contracted" other than in their technical or usual meaning, as construed by the federal courts, and sustained by the weight of authority. It is not necessary in this case to determine whether or not the homestead of a single person in this state can be subjected to the payment of a judgment rendered upon a tort, independent of any contract, prior to the date of the issuance of receiver's final certificate or patent. Here the judgment on such a tort was not rendered until after the issuance of such certificate, and did not become a debt until after such date.

3. In the case of *Flannagan v. Forsythe*, 6 Okla. 225, 50 Pac. 152, it is held that the exemption from liability for debts, as provided by section 2296, Rev. St. U. S., no longer applies to such homestead after final proof has been made and receiver's final certificate has been issued therefor. This rule appears to be supported, not only by reason, but by the weight of authority.

4. The court, upon motion for judgment on the pleadings and the admissions of fact made in open court, found for the plaintiff and against the defendant, and entered judgment accordingly. No motion for a new trial, assigning errors complained of, was filed in the lower court. It is contended that, where no motion for a new trial was made, assignments of errors, involving questions as to the findings of fact and matters of law occurring on the trial, cannot be reviewed in the absence thereof. This contention is sustained by a long line of Oklahoma and Kansas decisions; but in the case of *Sheets v. Henderson*, (Kan.) 93 Pac. 577, it is held that, where a case is submitted to the court

on an agreed statement of facts alone, there can be no new trial, the decision involving only a question of law. See, also, *Darling v. A., T. & S. F. Ry. Co.,* 76 Kan. 893, 93, Pac. 612, 94 Pac. 202; *Wagner v. Railway Co.,* 73 Kan. 283, 85 Pac. 299. But in view of the conclusions hereinafter reached, it is not necessary to determine whether or not such action of the court can be reviewed here, in the absence of a motion for a new trial, timely assigning such alleged error.

5. Wherever a person in a state of insolvency conveys property to another in trust for himself, or for partial consideration then and there received from the grantee, the additional consideration to be paid by the grantee or bargainee in the way of his support and maintenance during the term of his natural life, such conveyance is fraudulent and void as to the existing creditors of said grantor, without regard to any question of fraudulent intent. *Woodall v. Kelly,* 85 Ala. 368, 5 South. 164, 7 Am. St. Rep. 62; *Benedict v. Renfro,* 75 Ala. 121, 51 Am. Rep. 429; *Reynolds v. Crook,* 31 Ala. 634; *Miller v. Stetson,* 32 Ala. 161; *Sidensparker v. Sidensparker,* 52 Me. 481, 83 Am. Dec. 532; *Johnson v. Harvy,* 2 Pen. & W. (Pa.) 82, 21 Am. Dec. 429.

6. Is the plaintiff in an action for a tort, independent of any contract, a creditor; it being necessary for the defendant in error to have been a creditor at the time the alleged fraudulent deed was executed, so as to maintain an action to set it aside? In the case of *Farnsworth v. Bell et al.,* 5 Sneed (Tenn.) 531, it is held that a sale and conveyance of land, pending an action of slander against the bargainor, to avoid the payment of any recovery which might be had in said action, the bargainee having full knowledge of the purpose of the sale, is fraudulent, and will be set aside in a court of equity, on a recovery in the action of slander, at the suit of the plaintiff in said action, and the land subjected to the payment of said judgment. The great weight of authority is to the effect that a party having a claim against a defendant, growing out of a tort, independent of any contract, renders the party

having such claim a creditor. *Waldradt v. Brown,* 1 Gilman (Ill.) 397, 41 Am. Dec. 190; *Bongard v. Block,* 81 Ill. 186, 25 Am. Rep. 276; *Corder v. Williams,* 40 Iowa, 582; *Miller v. Dayton,* 47 Iowa, 312; *Rogers v. Evans,* 3 Ind. 574, 56 Am. Dec. 537; *Schaible v. Ardner,* 98 Mich. 70, 56 N. W. 1105; *Hoffman v. Junk,* 51 Wis. 613, 8 N. W. 493; *Schuster et al. v. Stout et al.,* 30 Kan. 529, 2 Pac. 642; Am. & Eng. Ency. Law, vol. 8, p. 750.

There appearing no reversible error in the record, the judgment of the lower court is affirmed.

All the Justices concur.