**JONES et al. v. WEY, Adm'r, et al.**

No. 16548—Opinion Filed April 27, 1926.

Rehearing Denied Feb. 22, 1927.

1. **Fraudulent Conveyances — Future Support and Advances as Consideration— Conveyance Valid to Extent of Performance of Agreement—Burden of Proof of Fraud.**

An agreement for future support by way of medical attention, hospital expenses, money for deferred interest on a mortgage indebtedness and for redemption of land from tax sale is not a sufficient consideration to uphold a conveyance or transfer by a debtor, when to do so will operate to the prejudice of existing creditors, as where all the debtor's property is conveyed or transferred. Where, however, the terms of the agreement have been carried out in good faith, the conveyance will be sustained to that extent; and where an agreement has been fully performed, as in this case, it becomes a valuable consideration and, in order to set aside the conveyance as fraudulent against creditors, it is necessary to show that such conveyance was made with fraudulent intent and that the grantee at the time of the conveyance had notice of such intent.

2. **Same — Conveyance Validated by Performance of Agreement.**

Until the agreement is fully performed, the conveyance has the infirmity of being voluntary, but it may be validated by the subsequent performance of the agreement.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Kiowa County; Thomas A. Edwards, Judge.

Action by S. B. Jones et al. against Arthur B. Wey, administrator of the estate of Jasper S. Brower. deceased, and others, for a decree setting aside a conveyance of real estate. Judgment for defendants, and plaintiffs bring error. Affirmed.

Tolbert, Hunter & Tolbert and S. S. Alexander, for plaintiffs in error.

124-1

E. V. Rakestraw and Rummons & Hughes, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Kiowa county by S. B. Jones and James A. Utterback, partners, doing business under the firmna me and style of Jones & Utterback, plaintiffs in error, plaintiffs below, against Arthur B. Wey, as administrator of the estate of Jasper S. Brower, deceased, and Lizzie Brower and Joe Brown, defendants in error, defendants below, for judgment decreeing a conveyance of real estate from Jasper S. Brower, deceased, to Lizzie Brower to be fraudulent and void against the plaintiffs in error and other creditors of Jasper S. Brower, deceased. The cause was dismissed as to Joe Brown. The parties will be referred to in this opinion as plaintiffs and defendants as they appeared in the lower court.

That part of the petition of plaintiffs necessary to a decision in this case, among other things, alleges that Jasper S. Brower, on the 12th day of February, 1916, in consideration of the renewal of other notes, made, executed and delivered to plaintiffs his promissory note in the sum of $2,225-66, with interest at ten per cent. per annum from date that on the 29th day of July, 1916, Jasper S. Brower, without consideration, and for the purpose and intent of cheating, hindering, wronging, and defrauding his creditors, conveyed by warranty deed a farm, consisting of about 160 acres in Kiowa county, Okla., and certain property in the town of Hobart, Okla.: that the farm was worth about $9,000, and the town property worth about $4,000, the town property being the homestead of Jasper S. Brower and Lizzie Brower; that said deed of conveyance was placed of record on the 5th day of October, 1917; that Jasper S. Brower died intestate on the 11th day of February, 1919, a resident of Kiowa county, Okla.; that Arthur B. Wey was appointed as his administrator; that the plaintiffs'

claim for the amount of the note was duly filed and rejected by the administrator, and an action was brought upon said note to recover judgment, and on the 2nd day of February, 1921, a judgment was obtained against Arthur B. Wey, administrator of the estate of Jasper S. Brower, deceased, in the sum of $3,-832.26 with ten per cent. interest thereon from date of judgment and for costs; that the judgment became final upon the expiration of the time limit for appeal from said judgment on the 15th day of February, 1922; that the farm land conveyed to Lizzie Brower was the only property out of which said judgment could be satisfied; that after the refusal of the administrator and the county court to make an order on the administrator to bring action to recover said lands for the benefit of the estate, the plaintiffs filed this action in their own names. Copies of the deed, judgment and administration proceedings were filed with the petition and made a part thereof as exhibits.

The defendant Lizzie Brower answered the petition, admitting her ownership of the property, but denying that the same was conveyed to her without consideration, or with intent to cheat and defraud the creditors of her deceased husband, specifically denying that she ever had any knowledge of any intent on the part of Jasper S. Brower to cheat, hinder, delay, and defraud his creditors by the conveyance of the real estate described, and denied that she had any such knowledge, or had any knowledge whatever of the pretended indebtedness claimed by the plaintiffs to be due them from the said Jasper S. Brower, deceased, prior to the death of the said Jasper S. Brower; that said property was derived by the joint efforts and labors of herself and Jasper S. Brower and their children during their married life, covering a period of over 30 years; that, for some time previous to the date of the conveyance, Jasper S. Brower was in failing health, and continued in this condition until the time of his death: that said farm had a mortgage indebtedness against it in the sum of $2,000 and accrued interest; that the interest upon said mortgage indebtedness was long past due and in default; that said Jasper S. Brower had not been able to pay the taxes upon said real estate, and same had been sold for taxes and bid in by the holder of the mortgage; that the said Jasper S. Brower, on account of his physical condition, decided to sell his equity in the farm, so as to provide means for medical treatment in an effort to regain his

health, and put the same on the market; that this answering defendant's brother. R. E. Hobbs, offered to advance the amount to redeem the property from taxes and accrued interest and advance a necessary fund to pay doctor and hospital bills, if the said Brower would convey the real estate to this answering defendant, which arrangement was entered into, and the conveyance was executed under these circumstances; that pursuant to said agreement, said R. E. Hobbs furnished the money to redeem the lands from tax sale and to carry the same with the loan company and to meet the doctor, hospital and nurse bills; that the said Jasper S. Brower temporarily recovered his health to some degree, and in about a year thereafter, again suffered an attack of the disease from which he was suffering, and that the said R. E. Hobbs again furnished the money to pay the hospital, doctor bills, and nurse hire, during his last illness and up to the time of his death; that she received payment on Brower's life insurance policy and paid off the mortgage indebtedness and kept the taxes paid up, and had paid out therefor the sum of $2,500; and prayed that the petition of plaintiffs be dismissed, and that she have judgment for her costs, but, in the event the court should declare the conveyance to her void and in fraud of creditors, that she be decreed a one-half interest because the same was accumulated by her joint services and the services of the family, and that she be subrogated to the rights of the holders of the mortgage and for the amount she paid in redeeming the land in the amount of the mortgage, and for general relief.

The administrator, Arthur B. Wey, answered by way of general denial. Plaintiffs filed a reply in the nature of a general denial. Trial was had to the court without the intervention of a jury, a jury having been specially waived, and resulted in a general judgment in favor of the defendants and against the plaintiffs. Motion for new trial was filed, heard, and overruled, and the cause comes regularly upon appeal from said judgment.

Attorneys for the plaintiffs submit their arguments upon five propositions, which are as follows:

(1) The plaintiffs had the right to bring and prosecute this action.

(2) The defendant Lizzie Brower is not entitled to be subrogated to the rights of the holder of the note she paid, for the reason that she signed the note with her husband and was primarily liable thereon.

(3) The record fails to disclose that the plaintiffs are guilty of laches in their endeavor to collect their note against the estate.

(4) The deed is fraudulent and void under section 5271, C. O. S. 1921.

(5) The promise of Hobbs to pay for the medical expenses to be incur ed by Brower in the future was not a sufficient consideration to support the deed against the creditors of Mr. Brower.

The first proposition urged is conceded to be correct by all parties to this action. The second and third propositions are not necessary to be determined in this appeal, in our opinion, in view of the disposition to be made in this opinion of the fourth and fifth propositions. The fourth and fifth grounds will be disposed of together. It is urged by attorneys for plaintiffs that the deed from Jasper S. Bower to his wife is void under section 5271, Comp. Stats. 1921. This section has received a judicial construction by this court in the case of McCaffrey et al. v. Owings, 110 Okla. 128, 236 Pac. 390, where in the first paragraph of the syllabus this court said:

"The term 'fair and valuable consideration,' used in section 5271, Comp. St. 1921, providing that every conveyance of real estate made without a fair and valuable consideration, shall be void as to the creditors of the vendor, means that the consideration shall be a substantial compensation for the property conveyed, or that it shall be reasonable, in view of the surrounding circumstances and conditions, in contradistinction to an adequate consideration."

In the light of the above construction of the section referred to, we must examine this record and see if, under the circumstances of this case, the consideration paid for the conveyance complained of here was a substantial compensation for the property conveyed, or whether it was reasonable in view of the surrounding circumstances and conditions present at the time of the execution thereof. The town property conveyed, being impressed with the homestead character, was exempt from any claim of creditors, and therefore cannot be considered, but the question of the conveyance of the farm land is the only question that is presented in this cause for our serious consideration. It is apparent that whatever question there may have been as to the justness of the debt secured by the note of Jasper S. Brower, deceased, executed and delivered to the plaintiffs, was concluded by the judgment obtained by the plaintiffs in the original action on the note. It must also be con-

ceded that if the execution of the conveyance by Jasper S. Bower to the defendant Lizzie Brower, his wife, was not supported by a proper consideration and was in fraud of creditors of the deceased, it should be set aside and restored to his estate for the payment of the just debts contracted by him prior to his death. Upon review of the testimony in this case, we find it sufficiently proven, if Mrs. Brower is to be believed, that she, at one time, had knowledge of the fact that her deceased husband was indebted to the plaintiffs, but she believed that said indebtedness had been paid and discharged long prior to the execution of the deed in question here, and that the first she knew of the existence of this note was several months after her husband died, when one of the plaintiffs came to her, claiming that this indebtedness was due, and this was over three years after the execution of the conveyance sought to be set aside and eight months after the death of Jasper S. Brower, and while it is true that her testimony showed that she had knowledge of her husband's business generally, and while it is true that there was contradictory evidence as to what conversation took place between her and the plaintiff James A. Utterback, in October, 1918, and S. S. Alexander, which took place April 8, 1920, yet it is clear from her testimony that she did not know about this indebtedness, and it is also clear from the testimony that this conveyance was not entered into as a secret transaction, but the conveyance was drawn by J. A. Hyndman, the holder of the mortgage, against this property after a full discussion between him and the deceased in the presence of Bell Isor, a witness, after the conditions had been agreed upon between him and R. E. Hobbs, his brother-in-law, and in the absence of Hobbs, and the deed was drawn by the witness, Hyndman, and delivered to him for safekeeping, and was not delivered to the defendant Lizzie Brower until sometime after, not disclosed by the record; that, at the time of the execution of the deed, the deceased, Jasper S. Brower, was sick and confined to his bed, and had been under the care of a doctor, and had been nursed and looked after by the members of the fraternal order of Odd Fellows, some of the members of which order had suggested that he sell his equity in the lands in controversy to procure funds for his care and attention; that the farm, at the time, was under mortgage to the witness, Hyndman, to secure a note for $1,700; that the deceased had made default in the payment of interest upon this mortgage; that he had been unable to pay

the taxes upon the land; that the land had been sold and bid in by the mortgagee, Hyndman, for taxes for the year 1915, and the said Hyndman had paid the taxes for the year 1916; that the deceased was not able to meet his debts and the only property he had was the homestead and the equity in his land; that his physician had advised him and his family that it was only a question of time when his life would end, and that, under these extreme circumstances, he had placed his equity in this land in the hands of a real estate agent for sale; that he had not sold it, and he called in his brother-in-law, R. E. Hobbs, who was the brother of his wife, and told him his crippled financial circumstances, and offered to sell him the farm for $2,200 for the express purpose of paying up the deferred interest and to redeem the land from taxes, and to pay his doctor bills, nurse hire and hospital expenses, in an effort to save his life or regain his health. His brother-in-law, R. E. Hobbs, agreed that he would not take the title to the land, but, that, if he would convey the land to his wife, Lizzie Brower, he would pay the taxes, advance money for doctor, hospital bills, and nurse hire, and take care of him during his lifetime. R. E. Hobbs had already paid some of his bills, and immediately after the execution of the deed he hired a nurse and had the doctors to take the deceased to a hospital where he was kept at the expense of R. E. Hobbs for several weeks; that Hobbs and the members of the deceased's family together carried out this agreement, redeemed the land from tax sale, paid all the taxes, paid the deferred interest, and carried out this agreement in its entirety up to and including the last attendance and death of the said Brower, and expended the sum of about $2,200, and the agreement on their part thereby became fully performed, three years and four months before this action was commenced.

The deed complained of was placed of record on the 5th day of October, 1917, which was constructive notice to the public of the transaction. Then, under such circumstances, we are to determine the question whether this deed should be set aside upon the grounds of fraud against his existing creditors, the plaintiffs in this case.

Unquestionably, the agreement for future support not furnished, or only partially furnished, would not be sufficient consideration to uphold the transaction as against creditors, but the rule is different where support has been furnished in good faith under an agreement of the character under consideration here, and where the agreement has been

fully performed, it then becomes a valuable consideration, and in order to set aside the conveyance as fraudulent against creditors, it is necessary to show that such conveyance was made with fraudulent intent, and that the grantee at the time of the conveyance had notice of such intent. We can conceive of no situation that would better justify the making of this conveyance by the deceased than is presented by the facts in this case. He was in default both in the payment of interest and in the payment of taxes. The lands had been sold for taxes, and he was in the last extremity, both financially and physically, and, in order to save anything from his property and to provide himself with a last chance to live or to regain his health, he executed this conveyance, and because of the execution of the same he received the amount that he was willing to sell his equity for in cash, and there could possibly be no fraud successfully urged against a person acting in such an extreme case, as is presented here, especially where the brother-in-law and wife both testified that they knew nothing of the existing obligation owing from the deceased to the plaintiffs in this case. Several authorities are cited by counsel for the plaintiffs in their brief, and they rely more particularly upon the case of Shelby et al. v. Zeigler, 22 Okla. 799, 98 Pac. 989, where it was held that:

"A deed executed by a party who is insolvent, the liability then existing on which an action to set aside such conveyance is based, the consideration for the deed on the part of the grantee being his promise to support and maintain the grantor during his natural life, is in legal effect a conveyance of property to the grantee by the grantor in trust for himself, and is fraudulent and void as to existing creditors of the grantor."

Upon an examination of this case, we find that the deed complained of in the case was executed on the 19th day of September, 1905, and the judgment obtained in October, 1905, and the action to set aside the deed was on the 12th day of December, 1906, and that the consideration for the deed was an agreement on part of the grantee to maintain and furnish future necessary support and attention during the life of the grantor, but nowhere does it appear in that case that the consideration had been fully paid and agreement fully carried out, or that anything had been paid by the grantee, and the case referred to above is clearly distinguishable from the facts in the instant case in that, in the instant case, the entire consideration had been fully paid and carried

out, under the circumstances stated above. Many other cases are cited by attorneys for plaintiffs, but, upon examination of these cases, none of them comes within the extreme facts showing the necessity for the conveyance as is presented in the instant case.

Subdivision 4, sec. 7, 20 Cyc. 493, under the head of "Fraudulent Conveyances," announces the rule to be as follows:

"An agreement for future support is not a sufficient consideration to uphold a conveyance or transfer by a debtor, when to do so will operate to the prejudice of existing creditors as where all the debtor's property is conveyed or transferred. Where, however, support has been furnished in good faith, the conveyance will be sustained to that extent; and where an agreement for future support has been fully performed it becomes a valuable consideration, and in order to set the conveyance aside as fraudulent against creditors, it is necessary to show that such conveyance was made with fraudulent intent, and that the grantee at the time of the conveyance had notice of such intent."

To the same effect is section 217, 27 C. J. 531, and the authorities in the footnotes in each of the above-cited sections are in full accord. The following cases of Hays v. Montgomery, 118 Ind. 91, 20 N. E. 646, Gregory v. Lamb, 19 Ky. L. Rep. 943, 42 S. W. 339, Hisle v. Rudasill, 89 Va. 519, 16 S. E. 673, Ryan v. Simms, 147 Minn. 98, 179 N. W. 683. and Kelsey v. Kelley (Vt.) 13 L. R. A. 640, sustain the above principle. In the body of the opinion, at page 684 of the Minnesota case, it is said that:

"Until the support is furnished the conveyance has the infirmity of being voluntary, but it may be validated by the subsequent performance of the agreement to support."

Authorities are cited in support thereof. We are of the opinion, both upon reason and authority, that where, as in this case, the agreement to support has been fully performed, under the facts in this case, it is necessary to show that the conveyance was fraudulent in fact, and made with fraudulent intent, and that the grantee had notice of such intent at the time of the conveyance.

We are therefore of the opinion that the judgment of the lower court is not clearly against the weight of the evidence, and that it was correct, and it should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. p. 530 §§214, 215; p. 531 §217; anno, 2 A. L. R. 1438; 23 A. L. R. 584; 12 R. C. L. p. 546, et seq.; 2 R. C. L. Supp. pp. 1452-1454; 5 R. C. L. Supp. p. 649; 12 R. C. L. p. 666 'et seq. (2) 27 C. J. p. 530 §214; p. 531 §217.